225 N.J. Super. 242 (1988)
542 A.2d 39
FRANK T. INNES, PLAINTIFF-APPELLANT,
v.
NITA L. INNES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 18, 1988.
Decided May 31, 1988.
*243 Before Judges FURMAN, BRODY and LONG.
James J. Byrnes argued the cause for appellant (Byrnes & Guidera, attorneys; James J. Byrnes, on the brief).
Norman W. Albert argued the cause for respondent (Libby E. Sachar, attorney; Libby E. Sachar, on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
The parties were divorced in March 1984. Plaintiff was then 60 years old, and his wife 59. Their major assets were the marital home and their pensions. The judgment of divorce incorporating the terms of an agreement provided, among other things, that plaintiff pay defendant $650 a month alimony and, as her share of his pension, $19,000 less 40% of the value of her pension. The judgment further provided that the marital home be sold within a year and the proceeds divided equally. Plaintiff used a portion of his share of the proceeds from the sale of the home to pay defendant her net share of the value of his *244 pension. After these adjustments, she received approximately $75,000 of the proceeds and he received approximately $40,000.
Plaintiff was laid off from work in June 1985 and immediately moved for termination of alimony because he was no longer earning income. The trial court reduced his alimony payments from $650 to $550 a month, established arrearages in the amount of $3,600 and ordered him to pay $1,200 of defendant's attorney's fees. In reducing alimony by only $100 a month and establishing arrearages of $3,600, the trial judge found that plaintiff's monthly income was $1,502, consisting of $622 Social Security benefits, $720 pension payments, and $160 payments from an annuity that plaintiff had purchased with $24,000 of his share of the proceeds from the sale of the home.
The basic issue in this appeal is whether, for the purpose of determining alimony, the trial judge properly considered the payments plaintiff receives from his pension and from the annuity he had purchased with the proceeds of the sale of the marital home. Plaintiff contends that those payments are derived from his equitable share of the marital assets and therefore are not available to pay alimony. He relies on the holding in D'Oro v. D'Oro, 187 N.J. Super. 377 (Ch.Div. 1982), aff'd 193 N.J. Super. 385 (App.Div. 1984). We respectfully disagree with D'Oro.
D'Oro posed the question of whether pension payments to a husband who retired five months after the divorce should "be included in an income base for purposes of re-establishment of alimony[.]" Id. 187 N.J. Super. at 378. As here, the wife in D'Oro had received a portion of the value of the pension in a lump sum as part of the equitable distribution of marital assets, the preferred method of distributing a spouse's equitable share of the other spouse's pension. Kikkert v. Kikkert, 177 N.J. Super. 471, 477-478 (App.Div. 1981), aff'd 88 N.J. 4 (1981). The court held that "it will be inequitable for plaintiff [wife] to be able to include his pension income twice for her benefit, first for a share of equitable distribution, and second, for inclusion in *245 his cash flow for determination of an alimony base." D'Oro, 187 N.J. Super. at 379. (Emphasis in original.) The court "left to another day" the question of whether pension payments may be considered as a basis for alimony "after such point in time as defendant [husband] has received his share of `present value.'" Id. at 380. (Emphasis in original.)
There is surface appeal to the argument that a supporting spouse should not be required to pay a dependent spouse "twice" from the supporting spouse's pension. Kikkert encourages a lump sum payment to a spouse of the value of the other spouse's future pension payments in order to avoid prolonging contacts between divorced spouses. Kikkert, 177 N.J. Super. at 477-478. (That rationale is questionable in cases where an alimony award assures post-divorce contacts.) In the present case, plaintiff "advanced" to defendant the lump sum present value of his pension from his share of the proceeds of the sale of the marital home. Superficially, it seems unfair to require him to pay plaintiff part of his pension payments "again" as alimony.
The argument is unsound because equitable distribution and alimony are not the same. They are fundamentally different in one important respect:
[Equitable distribution to a wife] gives recognition to the essential supportive role played by the wife in the home, acknowledging that as homemaker, wife and mother she should clearly be entitled to a share of family assets accumulated during the marriage. Thus the division of property upon divorce is responsive to the concept that marriage is a shared enterprise, a joint undertaking, that in many ways it is akin to a partnership.
[Rothman v. Rothman, 65 N.J. 219, 229 (1974).]
Alimony, on the other hand, is meant to impose on the supporting spouse the duty to give the dependent spouse sufficient financial support, within the means of the supporting spouse, to continue to live according to the economic standard that was established during the marriage. Mahoney v. Mahoney, 91 N.J. 488, 501-502 (1982). "When support of an economically dependent spouse is at issue, the general considerations are the dependent spouse's needs, that spouse's ability to contribute to *246 the fulfillment of those needs, and the supporting spouse's ability to maintain the dependent spouse at the former standard." Lepis v. Lepis, 83 N.J. 139, 152 (1980).
Thus it is not inconsistent for a dependent wife to receive the value of a portion of her husband's pension as her share of the marital partnership, and nevertheless look to later pension payments as evidence of her former husband's ability to contribute towards maintaining her at their former marital economic standard.
For the same reasons it is not inconsistent to consider as evidence of his ability to pay alimony the payments he receives from an annuity purchased with his equitable share of the marital estate. The same point is made in Beyer v. Beyer, 64 Ohio App.2d 280, 413 N.E.2d 844, 846 (1979):
Although it is true, as plaintiff husband argues, that this sum represents the sale of an asset which was awarded to the plaintiff in the property settlement, nonetheless, this sum is an asset which may be taken into consideration in determining alimony just as any asset which the wife holds may be taken into consideration. It is of no consequence that these assets may have originated from the property settlement.
This is not to say that equitable distribution and alimony are unrelated. Rothman emphasizes that equitable distribution serves an important second purpose besides distributing the assets of the marital partnership to the partners:
Hitherto future financial support for a divorced wife has been available only by grant of alimony. Such support has always been inherently precarious. It ceases upon the death of the former husband and will cease or falter upon his experiencing financial misfortune disabling him from continuing his regular payments. This may result in serious misfortune to the wife and in some cases will compel her to become a public charge. An allocation of property to the wife at the time of the divorce is at least some protection against such an eventuality. [Rothman, 65 N.J. at 228-229.]
This relationship between equitable distribution and alimony may require the dependent spouse to tap her assets, including property received in equitable distribution, to absorb some of the diminution of the supporting spouse's ability to pay alimony when upon retirement his earned income is replaced by lower pension payments. Cf. Lynn v. Lynn, 165 N.J. Super. 328, *247 341-342 (App.Div. 1979), certif. den. 81 N.J. 52 (1979) ("In our view the trial judge gave no consideration to the possibility of invading Mrs. Lynn's assets to assist in providing child support during the three-year period of Dr. Lynn's markedly diminished earnings.")
We reject the D'Oro rule that whenever upon divorce a dependent spouse receives a lump sum share of the value of the supporting spouse's anticipated pension payments as part of equitable distribution, those pension payments or any portion thereof are not to be considered in readjusting alimony after the supporting spouse retires. The same is true for other assets that spouses acquired in equitable distribution.
The better rule is that income and assets of both former spouses, however they were derived, are to be considered in light of the parties' circumstances in determining the supporting spouse's ability to pay and the dependent spouse's need for alimony. Those circumstances include the form in which assets are held. For instance, a judge generally would consider the availability of liquid assets such as life-time pension and annuity payments before considering the availability of a home in which a spouse is living with children. See Duplantis v. Duplantis, 470 So.2d 480, 482 (La. App. 1 Cir.1985). Cf. Shaffer v. Shaffer, 154 N.J. Super. 491, 495 (App.Div. 1977) (in considering award of counsel fees to wife who had received property in equitable distribution, "value and liquidity of the property received by the wife will have a direct bearing upon her need for the award").
Prior to the termination of plaintiff's employment, he had been receiving a net earned monthly income of $2,054. After termination that income was replaced with pension payments of $720 a month. His pension income is supplemented by an additional $920 unearned monthly income, including $622 Social Security and $160 from the annuity he had purchased with his share of equitable distribution. Plaintiff's monthly income totals $1,641. His fixed assets total $19,580, which includes *248 $10,200 in an IRA account that is subject to payment of an income tax upon liquidation.
Defendant's monthly income, all unearned, is $971, including $280 Social Security. Her fixed assets total almost $70,000, including an automobile. Thus the effect of the $550 monthly alimony payments is to leave plaintiff with a monthly income of $1,091 and defendant with a monthly income of $1,521.[1]
We cannot tell whether the award is fair because the judge made no findings as to the parties' circumstances. He merely recited the amount of plaintiff's reduced income and said that "plaintiff's income has been substantially reduced by reason of his no longer being employed." The judge then said that "the Court sets a proper amount of support at the figure of $550.00 per month." He gave no reasons for establishing the alimony at that level or for assessing plaintiff $1,200 of defendant's attorney's fees. See Williams v. Williams, 59 N.J. 229, 232-234 (1971).
We reverse the order modifying alimony, fixing arrearages, and awarding attorney's fees, and remand for a reconsideration of these issues in light of this opinion.
LONG, J.A.D., concurring in part and dissenting in part.
I concur in the determination of the majority to the extent that it mandates a remand for further proceedings. Such proceedings are in order because the judge failed to make findings to undergird the award of alimony and counsel fees and the setting of arrearages.
I dissent from the majority's conclusion that plaintiff's pension payments are income for alimony purposes. They are not income at all. Plaintiff and defendant divided the pot of *249 marital assets at the time of the divorce. In so doing, defendant took her share of plaintiff's pension in a lump sum. Plaintiff now receives his share of the pension periodically. Periodicity does not change the nature of the transaction or the character of the pension payments as assets and not income. This is not a situation in which a distributed asset generates or throws off income. In that event, the income would clearly be a part of the post-judgment alimony base. Here, the pension payments sought to be tapped by defendant as alimony are plaintiff's equitable share of the marital asset; as such they are not includable in the calculation of available income for an alimony award. It is not the fact that the pension was part of the marital distribution which is pivotal. It is that the pension is not income. Simply stated, no asset, however derived, should be considered part of the income available for alimony purposes.
This is not to say that assets of a party may not be considered by the court in determining how to allocate real income for an alimony award. Thus, for example, a court may see fit to award a dependent spouse a disproportionate share of the supporting spouse's actual income in consideration of a disproportion in their assets. That is a far cry from the majority's conclusion which essentially allows assets to be mixed with income as a basis for an alimony calculation.
Noteworthy as well is that the majority opinion will operate to discourage lump sum settlements in cases involving pensions subject to future receipt. Most thoughtful matrimonial lawyers will advise their clients in continuing alimony cases to await the receipt of the pension for distribution at which time both spouses will receive their share in periodic payments. This will obviate the possibility that the dependent spouse will tap the asset twice. Whether a scheme which discourages lump sum settlements is good or bad is problematic. At least this much is certain, it will contravene the plain language of Kikkert encouraging such settlements.
*250 To the extent that it can be shown that some percentage of plaintiff's pension payments were generated after the pension was distributed, that amount, unlike the distributed share, would be includable in the alimony income base. Likewise, insofar as the annuity payments can be analyzed so that that portion which is actually income generated by the $24,000 which plaintiff received in distribution can be segregated out, the segregated amount could be tapped for alimony as well. These matters, in my view, would be appropriate for the remand.
NOTES
[1] We culled these figures from the exhibits in appendices to the parties' briefs. There are some inconsistencies in the record so that the figures may be slightly inaccurate.