571 A.2d 1261

**George B. RILEY**

v.

**Jean H. RILEY.**

**No. 1216, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

April 4, 1990.

Timothy P. Kane, Rockville, for appellant.

Kevin G. Hessler (Harvey B. Steinberg and Miller & Steinberg, on the brief), Rockville, for appellee.

Argued Before WILNER, ROBERT M. BELL and WENNER, JJ.

WILNER, Judge.

George B. Riley appeals from an order of the Circuit Court for Montgomery County denying his petition to terminate or reduce alimony and directing him to pay $5,000 toward his ex-wife's counsel fee.

The parties were divorced in August, 1983. The decree, among other things, (1) awarded custody of the minor child of the parties to Ms. Riley, (2) gave her use and possession of the family home until December 30, 1984, when the child would turn 18, (3) required Dr. Riley to make the mortgage payments during the use and possession period, (4) awarded child support of $750/month, (5) directed Dr. Riley to pay alimony, and (6) gave Ms. Riley a monetary award based on marital property. The two aspects of that decree of interest here are those dealing with alimony and the monetary award.

The parties had been married for 32 years. At the time of the 1983 decree, Dr. Riley was 56 years old and was employed by the National Institutes of Health at an annual salary of approximately $52,000. In addition to his salary, he also was receiving disability benefits from the Veterans

Administration in the amount of $14,500. His aggregate monthly net income was $3,808. Ms. Riley was 55 years old and had not been employed outside the home since early in the marriage. Aside from support payments by Dr. Riley, her sole income was $100/month received from renting a room in the marital home. The court found that, due to her age and lengthy absence from any employment, her "additional approximate potential earning capacity" was limited to $500/month.

Initially, the court decided to award Ms. Riley indefinite alimony, structured as follows: from July 1, 1983 to December 31, 1984 (when the child support and use and possession order would end), $800/month; thereafter, $1,200/month. Before signing the decree, however, it reconsidered that decision and, applying the then-recently enacted changes in the alimony law, decided to terminate the alimony on June 30, 1991. This was based on the court's inability to find that Ms. Riley could not "reasonably be expected to make substantial progress toward becoming self-supporting" or that, after making such progress, "the respective standards of living of the two parties will be unconscionably disparate...."

The monetary award was premised on total marital property of $305,000, of which Dr. Riley owned $176,000 and Ms. Riley owned $129,000. Part of that property was Dr. Riley's civil service pension which, based entirely on his periodic contributions to the plan, the court valued at $37,-364 and in which it held Ms. Riley should have a 25% interest. The court ultimately made a monetary award to Ms. Riley of $11,500, of which about $9,300 represented her interest in the pension.

Neither party was entirely happy with the decree and so each appealed. In November, 1983, while the appeal was pending, Dr. Riley moved to reduce or extinguish Ms. Riley's alimony. That motion was denied on February 23, 1984.

In a *per curiam* Opinion filed July 3, 1984, we rejected most of the challenges made to the decree but did find merit in some of them. Principally, we concluded that the court erred in terminating Ms. Riley's alimony effective June 30, 1991. Noting that Dr. Riley's income amounted to about $67,000/year whereas Ms. Riley's maximum potential income was found to be only $6,000/year, we held that, "[i]n the case at bar there is no suggestion that the wife may reasonably expect to be self-supporting in the future." Based on *Holston v. Holston,* 58 Md.App. 308, 473 A.2d 459 (1984), we also implicitly found that a termination of alimony would leave Ms. Riley with a standard of living unconscionably disparate from that of Dr. Riley. We therefore found the termination to be an abuse of discretion and vacated that aspect of the decree. *See Riley v. Riley,* S.T. 1983, No. 1326, Opinion filed 7/3/84. We also found some minor fault with the valuation of Dr. Riley's pension, namely that the court did not take into account accrued interest on his contributions.

At some point, it appears, Dr. Riley paid the monetary award to Ms. Riley, including, of course, the $9,300 representing her interest in his civil service pension.

In September, 1987, Dr. Riley retired from government service. The next month, he unilaterally reduced Ms. Riley's alimony from $1,200 to $210 and filed a motion to reduce or terminate the alimony. Ms. Riley responded, in part, with a request for an earnings withholding order, which was granted. As a result of that order, Ms. Riley began receiving $1,109/month directly from Dr. Riley's pension plan administrator. This appeal arises from the ultimate disposition of Dr. Riley's motion to terminate or reduce alimony. By order dated August 10, 1989, the court denied that motion and, as we indicated, directed that Dr. Riley contribute $5,000 to Ms. Riley's counsel fees. Dr. Riley complains that the court erred in three respects—failing to terminate the alimony, failing to reduce it, and awarding counsel fees.

### (1) *Alimony*

Dr. Riley mounts two challenges to the rejection of his motion to reduce or terminate the alimony—one essentially legal and the other mostly factual.

The factual challenge is based on the assertion that, being a retiree, he is in substantially reduced circumstances whereas Ms. Riley has managed to find a job paying her a net monthly income of $907. Together with the rental income from the room in her home ($250/month), her net income since February, 1984 (when Dr. Riley's earlier motion to reduce or extinguish alimony was denied) had risen to $1,157/month. We may quickly dispose of that challenge. There was substantial evidence from which the master and the court could reasonably find that (1) coupling his pension and disability benefits with his post-retirement business income, Dr. Riley's monthly net income actually increased by nearly $1,000/month to $4,784, and that he could well afford the $1,200/month alimony, and (2) notwithstanding that Ms. Riley was earning more than the court expected in 1983, her expenses had also increased and the need for the $1,200 alimony was still present.

The legal challenge is itself in two parts, but the essence of it is that the court erred in considering Dr. Riley's pension and disability benefits as sources of income for the purpose of determining his ability to pay alimony. He urges that his pension benefits cannot properly be considered as a resource for purposes of alimony because Ms. Riley had already been given a share of the pension as part of the monetary award and therefore has no claim on the balance of the pension. The VA disability benefit, he claims, is exempt from consideration by virtue of *Mansell v. Mansell*, 490 U.S. ——, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) and two statutes—38 U.S.C. § 3101(a) and 42 U.S.C. § 662(f)(2). We find no merit in these contentions.

The first part of Dr. Riley's challenge overlooks the difference, in nature and function, between alimony and a monetary award based upon marital property. Although

there is an interrelationship between the two in the sense that, as to each, the court must consider the one in deciding upon the other (see Md. Fam. Law Code Ann. §§ 8–205(a)(9) and 11–106(b)(11)(ii)), they have quite different purposes and focuses. *See, in general, McAlear v. McAlear,* 298 Md. 320, 469 A.2d 1256 (1984).

Whether limited and rehabilitative in nature or indefinite in terms of duration, alimony is intended to provide periodic support to a financially dependent spouse following the divorce. Although, as in the case of a monetary award, present and past circumstances must be taken into account in deciding whether to award alimony, how much to award, and for what period of time to award it, the principal focus is really on the future: what will the needs of the spouse seeking the alimony be upon dissolution of the marriage; what other resources will that spouse have available to meet those needs; what resources will the other spouse have available from which to pay the needed support?

A monetary award, on the other hand, is not intended as support, and it focuses not on the future but on the present and past. The court looks at the property acquired prior to the divorce, especially that acquired during the marriage. The sole purpose of the award is to assure that the disposition of that property upon the divorce will be equitable in terms of the overall contributions that each party made to the acquisition of the property and to the marriage and its breakup. Although the court can direct that the award be paid over a period of time, its function is to provide a *present* compensation for an *existing* inequity in the *current* ownership of property.

It is true, of course, that, in awarding and setting the terms of alimony, the court cannot properly consider as a resource of the payor spouse property or income that the spouse does not have. Thus, if the court removes an asset or source of income from the payor spouse through a monetary award (or otherwise), it cannot premise an alimony award on the assumption that that asset or source of

income is still available to the payor. But we see no reason why it cannot base such an award on assets or sources of income that have *not* been taken from the payor and that do remain available. That does not constitute double dipping, as Dr. Riley alleges.[1] The New Jersey intermediate appellate court reached precisely this conclusion in a remarkably similar case. *See Innes v. Innes*, 225 N.J.Super. 242, 542 A.2d 39, 41 (1988):

> "[I]t is not inconsistent for a dependent wife to receive the value of a portion of her husband's pension as her share of the marital partnership, and nevertheless look to later pension payments as evidence of her husband's ability to contribute towards maintaining her at their former marital economic standard."

*See also Beyer v. Beyer*, 64 Ohio App.2d 280, 413 N.E.2d 844 (1979).

The evidence showed that Dr. Riley receives, or is entitled to receive, approximately $3,000 in monthly pension benefits.[2] That is his money, and it is therefore, in fact, a

---

**1.** To the extent that there is a seeming inequity in this notion, it arises more from the consequences of directing that the monetary award share of the pension be discharged through present assets rather than if, as, and when the pension benefits are actually paid. If the latter method had been chosen and 25% of each monthly pension benefit were paid to Ms. Riley, only the remaining 75% could be counted as a resource of Dr. Riley for purposes of alimony. In that sense, it appears that he has been unfairly prejudiced by discharging that part of the award through a lump sum payment. But that seeming inequity is not a real one. For one thing, in making the lump sum payment and retaining an entitlement to the full pension benefit, Dr. Riley has already received in monthly benefits far more than four times the $9,300 he paid to Ms. Riley. Moreover, the $9,300 he paid to her is no longer a resource of his and was not counted as such. He therefore *has* been given credit for the monetary award paid to Ms. Riley.

**2.** There was some confusion in the evidence as to the exact amount of Dr. Riley's entitlement. He claimed on his financial statement that he was receiving $1,774/month and that, by virtue of her earnings lien, Ms. Riley was receiving $1,109/month from the pension. That would make the total monthly benefit $2,883. Other evidence showed his net monthly benefit to be $2,101. The master found his net after-tax annual pension income to be $34,599. As the withheld tax was

resource that he has from which to pay alimony. We see nothing unlawful or unfair in the court's considering it as such.

The attack on the court's inclusion of the VA disability benefits as a resource is based, as we said, on Dr. Riley's reading of *Mansell v. Mansell, supra,* 490 U.S. ——, 109 S.Ct. 2023, 104 L.Ed.2d 675 and two Federal statutes. We think that he has misread both the case and the statutes.

The genesis of *Mansell* was the earlier case of *McCarty v. McCarty,* 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981). In *McCarty,* the Court construed the then-existing Federal statutes governing military retirement pay as precluding State courts from treating such pay as community property. "In direct response to McCarty," according to the *Mansell* Court, 490 U.S. at ——, 109 S.Ct. at 2026, 104 L.Ed.2d at 682, Congress enacted the Uniformed Services Former Spouses' Protection Act (P.L. 97–252, Title X, § 1002(a), 96 Stat. 730, 10 U.S.C. § 1408) authorizing State courts to treat "disposable retired or retainer pay" under the military retirement acts as community property or available for equitable distribution.

The issue in *Mansell* involved the impact of this new statute on another statute affecting military retirement pay. Under 38 U.S.C. §§ 310 and 331, veterans who become disabled as a result of military service are eligible for disability benefits, but "to prevent double dipping, a military retiree may receive disability benefits only to the extent that he waives a corresponding amount of his military retirement pay." *Mansell,* at ——, 109 S.Ct. at 2026, 104 L.Ed.2d at 682; 38 U.S.C. § 3105. That waiver requirement applies, of course, only when the veteran would otherwise be entitled to *both* retirement pay and disability benefits. Because retirement pay is taxable and disability benefits are not, many, if not most, persons having the choice

---

refunded, she found the net annual pension income to be $36,642, or $3,053/month. There was evidence to support that finding as well.

opt for the disability benefits and waive a corresponding amount of retirement pay. That is what Major Mansell did.

As noted, the Former Spouses' Protection Act allowed State courts to include "disposable retired or retainer pay" as community or equitable distribution property. The question was whether that applied to the disability benefits that Major Mansell received in lieu of the retirement pay to which he was otherwise entitled. As in *McCarty*, it was purely a matter of statutory construction. The term was defined in the statute and the definition excluded "amounts waived in order to receive [disability benefits]." 10 U.S.C. § 1408(a)(4)(B). Notwithstanding some ambiguous legislative history, a majority of the Court applied that clear exclusion in the statute itself and held that Congress did not overrule *McCarty* as to disability benefits received in lieu of retirement pay. The States were given authority to divide only "disposable retired or retainer pay" and that did not include retirement pay that was waived.

Neither *McCarty* nor *Mansell* dealt with the issue here. For one thing, the disability benefits received by Dr. Riley are not in lieu of any retirement pay. He has been receiving those benefits since 1947. Dr. Riley concedes that he is not a military retiree, that he has never received and has no right to receive military retirement pay, and that he therefore never waived any military retirement pay in order to continue receiving disability benefits. We are therefore not dealing here with § 1408. *See Repash v. Repash*, 148 Vt. 70, 528 A.2d 744, 745–46 (1987). More important, *McCarty* and *Mansell* dealt with whether military retirement pay (receivable, received, or waived) could be treated as community or equitable distribution property and thus made directly payable to someone other than the military retiree. Neither case purported even to suggest that such pay, much less any disability benefits actually received by a veteran, cannot be counted as income to the veteran for purposes of determining his or her ability to pay alimony.

■ The law generally is that such benefits *may* be considered as a resource for purposes of setting the amount of alimony and that doing so does not constitute an affront to the Federal anti-attachment and anti-alienation provisions, such as 38 U.S.C. § 3101 and 42 U.S.C. § 662(f)(2) protecting those benefits from the claims of creditors. *Repash v. Repash, supra,* 528 A.2d 744; *Mims v. Mims,* 442 So.2d 102 (Ala.Civ.App.1983); *Parker v. Parker,* 335 Pa.Super. 348, 484 A.2d 168 (1984); *Pyke v. Pyke,* 212 Neb. 114, 321 N.W.2d 906 (1982); *Ray v. Ray,* 222 Neb. 324, 383 N.W.2d 752 (1986); *Gerold v. Gerold,* 6 Or.App. 353, 488 P.2d 294 (1971). We find those cases persuasive and therefore hold that the VA disability benefits received by Dr. Riley may be considered as a resource for purposes of determining his ability to pay alimony. Accordingly, we reject his legal challenge to the order denying his motion to terminate or reduce alimony.

### (2) *Counsel Fees*

■ The master recommended that Dr. Riley be required to contribute $5,000 toward Ms. Riley's counsel fees for two reasons: (1) because Ms. Riley was justified in defending his motion to terminate or reduce her alimony, and (2) because by actual perjury and resisting discovery, he unnecessarily increased her fees. The master said, in relevant part:

"The defendant certainly has a right to ask the Court for a modification of alimony. In so doing, however, he necessarily put the plaintiff to substantial costs for legal services. Those costs were substantially increased because of the defendant's unwarranted refusal to comply with discovery requirements. He did not hesitate to perjure himself. By his action, the defendant substantially, unjustifiably and in bad faith increased the plaintiff's attorney's fees and costs. It is the opinion of the Master that the plaintiff's reasonable costs were increased by at least $5,000.00 because of the defendant's actions."

Though acknowledging that he "did not make full disclosure of his assets on his initial financial statement and at his deposition"—an understatement at best—Dr. Riley contends that his concealments and dissembling could not have added more than $3,000 to Ms. Riley's legal expenses and that the master (and the court) erred in concluding otherwise. Although the master could have been more precise in her language, we cannot say that the *court's* award did not take into account not only the extra legal work required by his obstreperousness but the normal work required in defending the action as well. We find no error in the award.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.