657 A.2d 358

**Robert J. BAUER**

v.

**Veronica V. VOTTA.**

**No. 1990, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

April 26, 1995.

William P. Englehart, Jr. (Nolan, Plumhoff & Williams, Chtd. on the brief), Towson, for appellant.

Michael B. Green, Towson, for appellee.

Argued Before ALPERT, CATHELL and MURPHY, JJ.

ALPERT, Judge.

This expedited appeal arises from a post-divorce modification of alimony proceeding in the Circuit Court for Baltimore County between former spouses. An Opinion and Order was filed by the trial court on August 5, 1994. Appellant, Robert J. Bauer, filed a Motion to Alter, Amend, and/or Revise, and

the trial court entered a Supplement to the Opinion and Order on September 9, 1994. This appeal followed, wherein appellant asks the following questions:

I.  Did the trial court clearly err in determining that the mutual pension waiver provision of the written Agreement of the parties, incorporated in the Divorce Judgment, did not bar and preclude an award of alimony based upon Appellant–Husband's pension income?

II. Did the trial court clearly err in awarding alimony to Appellee–Wife based upon the changed and present financial circumstances of the parties, especially when compared to their financial circumstances at the time of the original award?

We hold that the trial court did not err and, therefore, we affirm.

## Facts and Proceedings

Appellant and appellee, Veronica V. Votta (formerly Bauer), filed a Joint Election of Expedited Appeal in this Court. An expedited appeal was granted, and the following facts were agreed upon by the parties.

A Judgment of Absolute Divorce was entered on August 26, 1987, by the Circuit Court for Baltimore County (Fader, J. presiding). In terms of alimony, the judgment provided that

[t]he Husband agrees to pay directly unto Wife as true modifiable alimony, accounting from September 1, 1987 and the first of each month thereafter the sum of Seven Hundred Dollars (700.00) per month. Said alimony shall be modifiable and shall further be subject to termination upon the death of either the Husband or the Wife, or upon the Wife's remarriage. The Husband agrees that he will not seek modification of the alimony on the basis of Wife's increased earned income, so long as Wife's gross annual wages are less than Twenty Thousand Dollars ($20,000.00) per annum. Husband reserves the right to seek modification of alimonyn [sic] based upon all other significant changes in circumstances without restrictions, including in-

creases in Wife's nonearned income and investment income, etc., as permitted by law. The Husband hereby waives and releases any and all right which he may have to alimony or support from the wife, past, present, or future with the understanding that he may not apply for alimony or support hereafter.

Paragraph 9 of the Settlement Agreement further provided that

[E]ach party shall be entitled to retain all pension funds and I.R.A.s currently registered in their [sic] name or in their [sic] possession and each releases and relinquishes any and all claims which they [sic] may have in the pension funds and I.R.A.s of the other.

On January 4, 1994, Mr. Bauer filed a Petition for Modification of Alimony in the Circuit Court for Baltimore County, seeking either termination or reduction of the alimony based upon changed financial circumstances of the parties. A hearing was held on April 26, 1994, before Standing Master Richard J. Gilbert. At the hearing, the following facts were established.

The parties were married in 1955 and divorced in August 1987. Ms. Votta did not work full-time until just after the divorce. At the time of the judgment in 1987, Ms. Votta's itemized living expenses totalled $2,270 per month. Her gross annual earnings at that time were $8,816, and her total income, without alimony, was a little over $12,000. Mr. Bauer's itemized living expenses were determined to be $2,977 per month and his gross earnings were $44,908. His total gross annual income was $48,845. Also, Mr. Bauer had an employee savings plan account of approximately $36,000.

In April 1994, Mr. Bauer was sixty-two years old, and he testified that he was in good general health. He had remarried and was living with his present wife in a home owned by her. Ms. Votta, who was also sixty-two years old, testified that she had suffered from migraine headaches for twenty-five to thirty years and regularly missed time from work due to these headaches. It was determined that Ms. Votta's itemized

living expenses had increased slightly, to $2,485 per month, and her gross earnings from her job were $21,895 per year, plus interest income from 1993 of $1,610. Mr. Bauer's living expenses, according to his financial statement, were $3,451 per month. Mr. Bauer testified that his expenses were actually $3,194, because he had paid off his truck loan of $257 per month. Ms. Votta challenged these expenses and argued that Bauer's expenses were actually only $2,100 per month. The Master noted that Mr. Bauer's testimony contradicted his own financial statement as to certain claimed expenses. It was also determined that Mr. Bauer's employee savings plan account had increased to approximately $98,000, subject to a $17,000 loan. Mr. Bauer was also found to have an IRA of approximately $21,000 and a one-half interest in a vacation/rental property in West Virginia, valued by him at $52,-000.

The Master noted that Ms. Votta testified that her projected retirement income would be $259 per month at age sixty-five, plus Social Security benefits. He found that Mr. Bauer voluntarily retired from his job on February 1, 1994, and began receiving his pension and partial Social Security benefits at that time. Bauer had only nominal or minimal interest from other income from any source other than his pension. In April 1994, Mr. Bauer's gross pension income was $2,886.54 per month, or $34,638.48 per year. This income was expected to increase by $400–500 per month in two years.

It was also determined that Ms. Votta owned the former marital residence, which had an estimated fair market value of $63,000 in 1987. That residence had no outstanding mortgage. Furthermore, Ms. Votta testified that her savings accounts had been reduced from approximately $48,000 in 1991 to approximately $36,000 in April 1994.

Master Gilbert's Written Report and Recommendation was filed on April 27, 1994. He recommended a reduction in alimony from $700 per month to $300 per month, and expressly rejected Mr. Bauer's argument that the mutual pension waiver provision of the Settlement Agreement barred and

precluded an award of alimony based on his pension income. Mr. Bauer filed Exceptions to the Report and Recommendation on May 2, 1994. He argued again that the mutual pension waiver provision of the Settlement Agreement barred and precluded an award of alimony based on his pension income. Also, he argued that Ms. Votta demonstrated no present need for alimony based on her income and living expenses, especially in light of her former level of income and living expenses. On May 3, 1994, Ms. Votta also filed exceptions.

On July 15, 1994, the Exceptions came before the Circuit Court for Baltimore County (Smith, J. presiding). An Opinion and Order was filed on August 5, 1994. The judge denied or overruled Mr. Bauer's exceptions and modified the alimony award from $700 per month to $500 per month. Mr. Bauer filed a Motion to Alter, Amend, and/or Revise on August 9, 1994, requesting Judge Smith to review and change the Opinion and Order. On September 9, 1994, the court declined to change its decision. This appeal followed.

### Mutual Pension Waiver Provision

■ Appellant's first contention is that the trial court erred in determining that the mutual pension waiver provision in the written Agreement of the parties, incorporated in the Divorce Judgment, did not bar and preclude an award of alimony based upon his pension income. He contends that the language of paragraph 9 of the Settlement Agreement clearly and plainly stated that the parties waived and released "any and all claims" to the other party's pension or retirement benefits. Since the waiver language was absolute and comprehensive, appellant argues, the court must give effect to the plain meaning of the words and, therefore, since each party mutually agreed to waive any claims to the other party's pensions, the court could not grant an award of alimony based upon his pension income. We disagree.

Neither party cites any cases with facts similar to the instant case. Both parties refer to the case of *Riley v. Riley*, 82 Md.App. 400, 571 A.2d 1261, *cert. denied*, 320 Md. 222, 577

A.2d 50 (1990), in which a former husband sought to terminate or reduce modifiable alimony on the ground that the court could not properly consider his pension as a source of income for alimony purposes after his former wife had already been granted a share of that pension as a monetary award. In *Riley*, Chief Judge Wilner, writing for this Court, stated that

[i]t is true, of course, that, in awarding and setting the terms of alimony, the court cannot properly consider as a resource of the payor spouse property or income that the spouse does not have. Thus, if the court removes an asset or source of income from the payor spouse through a monetary award (or otherwise), it cannot premise an alimony award on the assumption that that asset or source of income is still available to the payor.

82 Md.App. at 406–07, 571 A.2d 1261. Appellant relies on this wording to argue that, since the mutual pension waiver provision of the Settlement Agreement removed his pension income as a resource from which alimony payments could be made, the court could not now premise an alimony award on the assumption that the pension money is available to him.

Appellee disagrees, as do we. Although not cited by either party, we discovered a case in another jurisdiction with facts similar to the instant case. In *Dugas v. Dugas*, 332 So.2d 501 (La.Ct.App.1976), the Court of Appeal of Louisiana was faced with a situation in which a husband appealed a permanent alimony award. He argued that in the community settlement agreement the wife had waived her rights to his pension, and since his pension was the only asset he had left, to award her alimony would be contrary to the settlement agreement. *Id.* at 502. While the court noted that the written settlement agreement was not entered into evidence and explained that neither party testified that the waiver in any way affected the wife's alimony rights, the court stated:

[W]e know of no authority to the effect that the relinquishments by the wife of her interest in a community asset bars her from using that asset or its revenue as a basis to determine the amount of alimony or to execute on such asset in the event alimony is in arrears. We see nothing

inconsistent between the wife relinquishing a community asset and claiming alimony though the claim for alimony may touch upon or affect the relinquished asset.

*Id.* Thus, the court affirmed the decision of the lower court allowing the award of alimony, notwithstanding that the husband's pension was the only asset from which he could pay that award. *Id.* at 502–03.

We agree with the ruling in *Dugas.* In the case *sub judice,* the court originally awarded "true modifiable alimony" to Ms. Votta. Clearly, it was within the court's contemplation that at some point, Mr. Bauer would retire and as a result, he would only have his pension income from which to make these alimony payments. Surely the court and the parties did not intend for alimony payments to cease at the time of Mr. Bauer's retirement, as the Agreement expressly provided for indefinite alimony, stating only that the "alimony . . . shall [ ] be subject to termination upon the death of either the Husband or the Wife, or upon the Wife's remarriage." The Agreement said nothing about the alimony being terminable at the time of the husband's retirement.

Accordingly, we see no reason why Mr. Bauer's pension income cannot be used by him to pay alimony. Unlike the circumstances of *Riley,* this income was not removed by the court through a monetary award or otherwise. It is a source of income still available to Mr. Bauer, and the court may properly consider it as a resource available to him from which he can pay alimony.

### Award of Alimony

■ Appellant's second contention is that the trial court erred in awarding alimony to Ms. Votta based upon the changed and present financial circumstances of the parties, especially when compared to their financial circumstances at the time of the original award. He explains that the increase in Ms. Votta's living expenses between the original award in 1987 and the modification hearing in 1994 was only $215 per month, less than 10% over a period of more than six and one-half years. Her annual gross earnings, however, increased

from $9,000 in 1987 to $22,000 in 1994, an increase of nearly 150 percent. Therefore, appellant argues, the increase in appellee's yearly gross earnings ($13,000) far exceeded the amount of alimony she was receiving ($8,400).

Appellant further explains that his claimed living expenses increased $217 per month, or 7 percent, over the same period of time. His gross earnings, however, decreased from $44,908 in 1987 to nothing in 1994. His gross pension income in 1994 was $34,638. He argues, therefore, that "there were substantially and materially changed financial circumstances from the date of the original award (August 1987) to the date of the modification hearing (April 1994)." Thus, he contends, the modification of alimony from $700 per month to $500 per month is "patently inadequate and insufficient under the circumstances" because "[t]here simply is no demonstrated need for alimony under the present financial circumstances." He contends that, between August 1987 and April 1994, Ms. Votta had "more than become self-supporting" and "[t]he increase in her gross earnings more than eclipsed her need for alimony."

This Court has affirmed grants of indefinite alimony, and refusals to award indefinite alimony, where a variety of disparities in income were projected. *See Rock v. Rock,* 86 Md.App. 598, 612 [587 A.2d 1133] (1991). 'Our approval or denial of these awards clearly indicate the importance we place upon the judgment and discretion of the fact finder in evaluating and weighing the evidence and determining all the facts and circumstances in making these very important decisions.' *Id.*

*Scott v. Scott,* 103 Md.App. 500, 653 A.2d 1017 (1995). When reviewing a lower court's grant of indefinite alimony, we are not able to substitute our judgment for that of the trial judge where he has not abused his discretion. *Rock v. Rock,* 86 Md.App. 598, 613, 587 A.2d 1133 (1991). "Unless the record is clearly to the contrary, we assume the trial judge knew and followed the law." *Id.* Furthermore, "[t]o the extent we are considering the facts, our review is limited to reviewing the evidence to assure ourselves that the Chancellor's decision was

not clearly erroneous." *Broseus v. Broseus,* 82 Md.App. 183, 197, 570 A.2d 874 (1990) (citing Md.Rule 8–131(c)).

We cannot say that the trial judge abused his discretion in allowing continued alimony but reducing the alimony award to $500 per month. The court clearly took into account all the facts necessary for a fair and equitable award, as delineated in section 11–106(b) of the Family Law Article. When the facts and evidence are considered, it cannot be said that the court's decision was clearly erroneous.

Appellee is of advanced age and has a health condition that precludes her from working at times. She was going to be retiring from the work force in three years and at that time will receive meager, limited benefits. Appellant's purported current living expenses were questionable, as they were contradicted by appellant's testimony. Appellant's income (including pension) was higher than appellee's and was expected to increase over the next two years, whereas appellee's was likely to remain the same. Appellant's savings were substantially higher than appellee's. Taking these and other factors into account, the court fashioned an award that resulted in the parties' having a fairly equal yearly income. Mr. Bauer's income would be $28,638,[1] and Ms. Votta's income would be $27,895.[2] This appears fair and equitable under the circumstances of this case.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

1. This figure was derived by subtracting $500 per month, a total of $6,000, from appellant's income of $34,638.

2. This represents Ms. Votta's income of $21,895 plus the $6,000 alimony.