574 A.2d 20

**Nancy Demarest HULL**

v.

**Kenneth Duryee HULL, Jr.**

**No. 1459, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 1, 1990.

Eric Peltosalo, Annapolis, for appellant.

Brian D. West, Vienna, for appellee.

Argued before GILBERT, C.J., and MOYLAN and ROBERT M. BELL, JJ.

MOYLAN, Judge.

■ Where alimony, permanent or rehabilitative, is appropriate, a number of factors may be considered in computing the appropriate amount thereof. Among them are the respective needs of the parties, including the cost of housing that the appellant argues about in the present case. Among them are the relative abilities of the parties to pay, which would take into account the relative disparity in wealth that the appellant argues about here. Among them

is also the standard of living that the parties enjoyed before the dissolution of the marriage, which is also argued by the appellant. In the case of rehabilitative alimony, moreover, the court would be concerned with whether, even after maximum rehabilitation had been attained, there might yet persist an "unconscionable disparity" in the relative living standards of the parties.

■ Where at the very threshold, however, the determination is made that each party to the dissolved marriage is so financially self-supporting that no alimony at all is required, all such factors become essentially immaterial. One does not compute the amount of a non-award. The appellant argues the present case as if the chancellor were computing the amount of alimony rather than determining whether alimony is even appropriate.

■ The marriage of the appellant, Nancy Demarest Hull (Wife), and the appellee, Kenneth Duryee Hull, Jr. (Husband), was dissolved when Judge Robert S. Heise, in the Circuit Court for Anne Arundel County, issued a Decree of Absolute Divorce on August 17, 1989. All issues other than alimony and attorney's fees had been resolved by way of a Property Settlement Agreement executed by the parties on February 15, 1989. Judge Heise denied the Wife's request for alimony and attorney's fees.

Upon this appeal, the Wife raises the following four contentions:

1. That Judge Heise abused his discretion in denying her alimony;

2. That Judge Heise erroneously refused to consider the Wife's financial circumstances immediately prior to her marriage;

3. That Judge Heise erroneously refused to consider evidence of the cost of replacement housing on Gibson Island; and

4. That Judge Heise abused his discretion in not requiring the Husband to pay the Wife's attorney's fees.

The June 15, 1973 marriage between Husband and Wife was the second marriage for both. The Wife was almost 61 years of age and the Husband was 66 years of age at the time of trial. No children were born of this second marriage. Each party had three adult children from their respective prior marriages. Both parties were in excellent physical health. The Wife never worked during the course of the marriage. The Husband worked only for the first 15 days of the marriage. At that time, he took his retirement from the CIA.

The key issue in this case is the Wife's contention that Judge Heise abused his discretion in refusing to award her permanent alimony. As we approach our consideration of the issue, we note that much of the Wife's argument is rooted in the language and in the philosophy of alimony law as it existed in Maryland prior to 1980. Chapter 575 of the Acts of 1980, now Md.Fam.Law Code Ann. §§ 11–101 to 11–111 (1984), was a watershed that changed dramatically the law's entire approach to the subject of alimony. In *Holston v. Holston*, 58 Md.App. 308, 321, 473 A.2d 459 (1984), Judge Bloom described the earlier attitude toward alimony, now abandoned:

"Formerly, when alimony was awarded, the award was for the joint lives of the parties or until the recipient remarried, subject to modification upon a subsequent material change in circumstances. It was a basic concept of alimony that a financially dependent spouse (at least one who was not at fault for the destruction of the marriage) should be able to maintain the same standard of living to which that spouse had become accustomed during the marriage, provided, of course, that the other party could afford it. *See Timanus v. Timanus*, 178 Md. 640, 642, 643, 16 A.2d 918 (1940)."

After 1980, the law's concern became that of fostering the self-sufficiency of both parties to the dissolved marriage. In this regard, alimony, when necessary, became essentially short-term and rehabilitative. It was designed primarily to turn the formerly dependent party into one

who, after the rehabilitative steps had been taken, achieved for the first time or reachieved financial self-sufficiency. The goal is to render the party seeking alimony self-supporting so as to vitiate any further need for alimony. In *Holston v. Holston, supra,* Judge Bloom observed in this regard, at 58 Md.App. at 321, 473 A.2d 459:

"Under the present statute, the principal function of alimony is rehabilitation. Thus, when awarding alimony, the chancellor is required to consider not only those factors relating to the financial situation, age and health of each party, their standards of living, the duration of marriage and the contribution of each party to its well being but also the ability of the party seeking alimony to be wholly or partially self-supporting and the time deemed necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment. *It is apparent, therefore, that the concept of alimony as a lifetime pension enabling the financially dependent spouse to maintain an accustomed standard of living has largely been superseded by the concept that the economically dependent spouse should be required to become self-supporting, even though that might result in a reduced standard of living.*" (Footnote omitted) (Emphasis supplied).

In *Turrisi v. Sanzaro,* 308 Md. 515, 524–525, 520 A.2d 1080 (1987), Judge Adkins, for the Court of Appeals, described this fundamental change in Maryland's philosophy toward the subject of alimony:

"There is no doubt that the Alimony Act made major changes in the Maryland law of alimony. Prior to its effective date, the standards for awarding alimony had been judicial rather than statutory. *Willoughby v. Willoughby,* 256 Md. 590, 592, 261 A.2d 452, 453 (1970). Now, those standards are essentially statutory, *e.g.,* Family Law Art. § 11–106, although many of the standards incorporate previous judicial rulings. *See McAlear v. McAlear,* 298 Md. 320, 329–30, 469 A.2d 1256, 1261 (1984).

Moreover, alimony may now be awarded to either spouse, § 11–101(b), and will usually be awarded for a definite time, if awarded at all, § 11–106.

One of the new concepts recommended by the Commission and embraced by the General Assembly was that of rehabilitative alimony. The Commission explained

'that the purpose of alimony is to provide an economic means for both parties to deal with their new unmarried life on their own. Put another way, the purpose of alimony is to provide an opportunity for the recipient party to become self-supporting.'

1980 Report at 2. Thus, alimony was 'not to provide a lifetime pension, but to facilitate a transition for the parties from the joint married state to the separate single one, where this is practicable.' "

In the present case, even that rehabilitative bridge to self-sufficiency was not required, let alone any permanent full or partial support. Both parties to the dissolved marriage were already at that level of financial independence and self-sufficiency that is the goal and purpose of Maryland's new approach toward alimony.

Judge Heise found as a matter of fact (the evidence overwhelmingly supports that finding) that the Wife was financially self-sufficient and required no alimony. At the time of their marriage in 1973, both Husband and Wife moved into the Wife's residence in Chevy Chase. The Husband took over the mortgage payments and the Wife continued to pay the utility bills. The Wife transferred the deed from her sole name to the joint names of both parties. When the Chevy Chase residence was sold for $208,000, the proceeds were divided so as to give 70% of the value to the Wife and 30% to the Husband, equalizing their interest in the property.

The parties then purchased a home on Gibson Island. They contributed equally to the purchase price and to the servicing of the debt. Both parties maintained their financial accounts completely separate from the other through-

out the course of the marriage. Each paid his or her fair share of the monthly expenses.

Judge Heise found and the evidence supports the finding that both parties conducted their financial affairs as if their marriage was a financial partnership. They split expenses equally. Each with three adult children, they deliberately kept their funds separate and distinct so that each would have a separate estate. They were desirous of keeping their estates separate.

During the course of the marriage, moreover, each of the parties became the beneficiary of a significant and substantial inheritance from third parties. Several years after the marriage, the Wife inherited from her father substantial funds, which she maintained in a separately identified account at Ferris, Baker, Watts Investment Company. As of March 31, 1989, the Wife's portfolio was valued at $598,960, yielding an estimated annual income of $45,271.

The Husband also inherited substantial money from his aunt, which he maintained in a separate account at Ferris, Baker, Watts Investment Company. As of March 31, 1989, his personal portfolio was valued at $531,717. He was also the beneficiary of a California Trust portfolio, valued at $733,799.

As of the date of trial, the Husband and Wife's Gibson Island home was valued at $1,150,000. Pursuant to their Property Settlement Agreement, the proceeds from the sale of that home were to be divided equally between them. After the payment of a $94,000 mortgage, each party was expected to receive approximately $550,000 from the sale of the Gibson Island property.

At the time of trial, therefore, the Wife had anticipated assets of $1,100,000. As her counsel conceded during the trial, she was self-supporting. The Husband had assets of $1,900,000. He was also self-supporting. We find no fault with Judge Heise's decision that alimony was not required in this case.

■ The appellant's next two contentions are essentially rendered moot by our decision with respect to the first. To the extent to which they merit any comment, however, we note that the Wife cites no authority for her proposition that Judge Heise was obliged to consider the fact that when she married the appellee, she gave up $900 per month alimony that she was receiving from her first husband. Were we calculating the amount of alimony she deserves, her premarital standard of living might be a factor. Where, on the other hand, she is sufficiently self-supporting that no alimony is required, the question is irrelevant. It must be noted, moreover, that both her inheritance from her father and the very significant appreciation of the Gibson Island home were events that occurred after her marriage to the appellee. The fact that she received monthly alimony from her first husband before either of these events had occurred is simply not material.

■ The Wife also complains that Judge Heise did not consider the evidence of the cost to her of replacement housing on Gibson Island. Again, evidence of the Wife's need would only be a factor in calculating the amount of monthly alimony. When the decision has properly been made that no alimony is appropriate, evidence going to show need is immaterial. Judge Heise found that without even touching her capital of essentially $600,000, yielding an annual income of $45,000, her anticipated proceeds from the sale of the marital home, in excess of an additional half a million dollars, would give her the wherewithal to provide adequate housing for herself. He concluded that Gibson Island is an attractive community but that one is not compelled to live on Gibson Island:

"There's nothing in this case to suggest to me that the standard of living between the parties will be unconscionably disparate. It's true that one may have now more assets, if you will, than the other, but even the Plaintiff in this case will have a million dollars or better to decide how she wants to spend it. We heard a great deal of testimony about Gibson Island, and I noted that she had

lived extremely well for right up until ten years ago when they moved to Gibson Island. And don't misunderstand me, to me it looks like a very lovely community, a tight knit of people of the same social graces, this, that and everything else, so that you don't run into various problems that you might run into ... into more closely confined neighborhoods, the problems of urban living that many communities seek, the terrible use that some people use of their property right next to somebody else's property without any consideration whatsoever.

It's almost a commune up there, if you will, in the manner in which these people say, 'We want to be gentlemen, we want to be ladies, and we want to respect each other's property rights and everything else,' so I can't say I do anything but admire her taste. If she wants to take some part of her million dollars, assuming it gets to be the million, and we all know that she's got about six hundred thousand now and will have, assuming this property goes for the million or so, they'll each have about five hundred thousand. How she wants to use that money is her business, and if she feels at her age and so forth that she still wants to buy this home and have it built, well, that's for her to decide. Many other people prefer to get let's say something that's not going to require the care and uptake that they would be willing to put up with and do at earlier ages. Many people look for a different, if you will, a different style of living."

Again, we see no error.

■ In view of the substantial assets available to both Husband and Wife, we see no abuse of discretion in Judge Heise's decision not to require the Husband to pay the Wife's attorney's fees.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.