605 A.2d 661

Rose A. COVIELLO

v.

John W. COVIELLO.

No. 989, Sept. Term, 1991.

Court of Special Appeals of Maryland.

May 1, 1992.

Marc G. Rasinsky (Dulany, Scott, Rasinsky & Leahy, on the brief), Westminster, for appellant.

E. David Silverberg, Towson (Daniel H. Green and Weisse & Green, on the brief), Eldersburg, for appellee.

Argued before BISHOP, ROSALYN B. BELL and CATHELL, JJ.

CATHELL, Judge.

Appellant, Rose A. Coviello, and appellee, John W. Coviello, were married in 1980. Each had been previously married and had children from their former marriages. Prior to their marriage, they each owned homes and were employed. Upon their marriage, appellant moved into appellee's home (hereinafter Lerner home), resigned from her employment and became a full-time homemaker. She subsequently sold the house she had owned prior to her marriage.

Appellant's daughter, Teresa, then 18, joined her mother and moved into appellee's house paying rent of $20 per week. This rent was collected by appellant for approximately five years.[1] Appellant and appellee later moved into a new home (hereinafter the Lakeland home) leaving appel-

---

1. There is a dispute as to what happened to the $20. The wife maintains she used it to buy food. The husband asserts that she placed it in a savings account in her name alone.

lant's daughter at the Lerner home. Teresa's rent was increased to cover the amount of the mortgage payment on the older home. Two years later, Teresa purchased that home from appellee.

Some three years after they moved to the Lakeland home, the relations between the parties had deteriorated to the point where they became estranged. Subsequently, appellant filed for divorce on December 22, 1988. As the reasons for this divorce, and the granting of it are not at issue, we shall not address them. There were numerous pleadings and *pendente lite* orders which also are not at issue in the appeal. Ultimately, the trial court granted a final divorce to appellee on his cross-complaint for divorce and further decreed, in part, as follows:

It is further ORDERED that the Defendant pay alimony in the amount of $1,500.00 per month to the Plaintiff for eighteen (18) months from the date of this Order.

It is further ORDERED that eighteen (18) months from the date of this Order the amount of alimony shall be reduced to $700.00 per month and that the Defendant pay alimony of $700.00 per month for an indefinite period to terminate only on the death of either party, the remarriage of the Plaintiff or on further Order of this Court.

* * * * * *

It is further ORDERED that the jointly owned marital property be sold and the proceeds of the sales be equally divided.

It is further ORDERED that the Defendant pay a monetary award of $32,426.44 to the Plaintiff to be due at the time of the sale of the Lakeland Drive home.

* * * * * *

It is further ORDERED that the Plaintiff's request for attorney's fees be and is hereby DENIED.

At the time of his order, the trial court also rendered a "Memorandum Opinion" which we will later address.

Neither party was satisfied with the trial court's decision. Rose Coviello appealed and John cross-appealed. Appellant presents us with four questions:

1. After determining that an award of indefinite alimony is appropriate on a finding that an unconscionable disparity will exist in the parties standard of living, has the trial judge erred in establishing an *in futuro* reduction in the amount?

2. Did the trial judge err in his determination of the value of marital property by making a deduction from the fair market value of real estate to reflect anticipated sales commission?

3. Did the trial judge erroneously characterize rental receipts as marital property when the weight of the evidence indicated that the funds did not exist at the time of trial?

4. Did the trial court err in refusing to grant Mrs. Coviello's request for attorney's fees?

In his cross-appeal, appellee asks:

Did the trial court abuse its discretion in awarding indefinite alimony?

We shall address their questions seriatim though we shall rephrase them, as is necessary, to correctly conform with the trial court's Order and Memorandum Opinion.

I

May the trial court award both indefinite
and rehabilitative alimony?

■ As can be seen from our rephrasing of it, appellant's first question does not accurately reflect the action that the trial court took in rendering its decision on alimony.[2]

---

**2.** Neither did the appellee realize what the trial court had done in respect to alimony, responding in its reply brief in terms of the trial court having authority to grant *in futuro* modifications when, in fact, no future reduction of indefinite alimony was granted in the first instance as we shall discuss.

The trial court, in its Memorandum Opinion, discussed at some length the relative premarital and marital incomes of the parties and their abilities to earn income after the marriage. It then opined as to relevant matters that had to be considered in making alimony determinations, saying:

Before awarding alimony, the Court must consider Mrs. Coviello's potential to be self-supporting *and the time necessary for her to train for suitable employment.* Md.Fam.Law Code Ann. § 11–106.... Mrs. Coviello is not currently self-supporting. Her medical problems make sedentary office work or sales her most realistic employment options. *These jobs do not require extensive training....* The Court finds that Mrs. Coviello should be able to *obtain suitable employment within the next eighteen (18) months.*

The Court further finds that after Mrs. Coviello becomes employed, she will not be able to close the gap between the parties' earning capacities. The parties' standards of living will be unconscionably disparate. To alleviate the disparity, the Court will continue her alimony.... [at] $700.00 per month. [Emphasis added.]

The court, in its Memorandum Opinion and the order based upon it, granted alimony of $1,500 per month for a period of 18 months. Then, finding that even if she fully rehabilitated herself the standards of living between the parties would still be unconscionably disparate, the court ordered that permanent alimony continue in the amount of $700 per month.

The trial court's initial award was $700 per month indefinite alimony with an additional $800 per month for 18 months for rehabilitative purposes. The reduction was established initially—it was not an *in futuro* order. It was not a reduction in indefinite alimony but a proper termination of rehabilitative alimony which reduced the total alimony. Such terminations of rehabilitative alimony are contemplated, if not required, by the statute. Therefore, the question for us, as we have said, is may a trial court decree what we shall describe as compound alimony, *i.e.,*

rehabilitative alimony for a specified period with indefinite alimony continuing thereafter? We hold that it may and explain.

The Maryland Annotated Code, Family Law Article section 11–106 (1991), provides in pertinent part:

(a) *Court to make determination.*—(1) The court shall determine the amount of and the *period for* an award of alimony. [Emphasis added.]

The court is required to consider certain factors that include:

(1) the ability of the party seeking alimony to be wholly or *partly* self-supporting;

(2) the *time* necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment....

\* \* \* \* \* \*

(c) ... The court may award alimony for an indefinite period, if the court finds that:

\* \* \* \* \* \*

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate. [Emphasis added.]

The trial court's order in the case at bar fully comports with the requirements of section 11–106 and is an especially effective compliance fully within, not only the letter of the law, but its spirit as well.

In *Rock v. Rock*, 86 Md.App. 598, 609, 587 A.2d 1133 (1991), we said, "Indefinite support may be warranted where ... rehabilitative spousal support for a limited period of time would result in gross inequity." (Citation omitted.) Judge Bell, for us, discussed the plethora of cases involving the award of alimony on disparity grounds and those where it had not been awarded. *See Turrisi v. Sanzaro*, 308 Md. 515, 520 A.2d 1080 (1987); *Melrod v. Melrod*, 83 Md.App. 180, 574 A.2d 1, *cert. denied*, 321 Md. 67, 580 A.2d 1077

(1990); *Broseus v. Broseus,* 82 Md.App. 183, 570 A.2d 874 (1990); *Rogers v. Rogers,* 80 Md.App. 575, 565 A.2d 361 (1989); *Bricker v. Bricker,* 78 Md.App. 570, 554 A.2d 444 (1989); *Wassif v. Wassif,* 77 Md.App. 750, 551 A.2d 935, *cert. denied,* 315 Md. 692, 556 A.2d 674 (1989); *Benkin v. Benkin,* 71 Md.App. 191, 524 A.2d 789 (1987); *Green v. Green,* 64 Md.App. 122, 494 A.2d 721 (1985); *Zorich v. Zorich,* 63 Md.App. 710, 493 A.2d 1096 (1985); *Holston v. Holston,* 58 Md.App. 308, 473 A.2d 459, *cert. denied,* 300 Md. 484, 479 A.2d 372 (1984). We said in *Rock: "Our approval or denial of these awards clearly indicate the importance we place upon the judgment and discretion of the fact finder...."* 86 Md.App. at 612, 587 A.2d 1133 (emphasis added). Throughout our present review, we shall be especially mindful of this *importance.*

This Court discussed in *Holston* the change in emphasis that occurred as a result of the enactment of Chapter 575 of the Acts of 1980. We stated: "Under the present statute, the principal function of alimony is rehabilitation." 58 Md.App. at 321, 473 A.2d 459. The trial court in *Holston* had ordered only temporary alimony for three years. We upheld the award of temporary alimony but held that "because the evidence leaves no doubt that the award of alimony for a limited period of time will leave Mrs. Holston *at the end of that period* with a standard of living greatly ... unconscionably disparate, ... the chancellor's failure to award indefinite alimony was a clear abuse of his discretion." *Holston,* 58 Md.App. at 324, 473 A.2d 459 (emphasis added). We noted: "The legislature recognized ... that in some circumstances it may be impractical to expect a dependent spouse to become self-supporting through further education or job training." *Id.* at 321, 473 A.2d 459.

This Court said in *Melrod:*

Nevertheless, in view of the great disparity in wealth between the parties, it is obvious that no matter how much rehabilitative alimony Mrs. Melrod receives and how much progress it will enable her to make toward

becoming self-supporting, the respective standards of living of the parties will be greatly disparate.

Even taking all of that into account, however, unless a revised monetary award will provide Mrs. Melrod with a great deal of income, the disparity in income and, therefore, standards of living, will be far greater than we held to be unconscionable....

83 Md.App. at 196, 574 A.2d 1 (citations omitted). Thus, in *Melrod*, we recognized the foreseeability of both rehabilitative and indefinite awards of alimony when the evidence supports a finding that even with maximum rehabilitation, an unconscionable disparity will continue to exist. See also *Broseus*, 82 Md.App. at 196, 570 A.2d 874, where we recognized that so long as supported by the evidence, consideration could be given to the future status of the parties in awarding alimony: "In assessing the weight to be given to the different income levels of the parties, the chancellor must determine whether that disparity *will change* and if so to what extent." (Emphasis added.) We said in *Rogers v. Rogers*, 80 Md.App. 575, 591, 565 A.2d 361 (1989): "When the dependant spouse reaches the limit of his or her earning capacity and is still living at an unconscionably disparate level, alimony may be awarded indefinitely in an effort to alleviate this imbalance."

In *Riley v. Riley*, 82 Md.App. 400, 406, 571 A.2d 1261 (1990), we opined on the nature of alimony under the current statute, saying that "[a]lthough ... present and past circumstances must be taken into account ... the principal focus is really on the future: what will the needs of the spouse ... be upon dissolution of the marriage; what other resources will that spouse have available to meet those needs...." In the case *sub judice*, the trial court determined the appellant's present needs, her need for additional rehabilitative alimony for the stated period and her subsequent future need for indefinite alimony after she had achieved full rehabilitation. Judge Wilner, now Chief Judge, pointed out in *Riley*, that alimony concerns future needs. *Id.* at 406, 571 A.2d 1261. Thus addressing those

future needs, at a present time, is the essence of the process.

By making a present decision that appellant's standard of living, even after maximum rehabilitation, would remain unconscionably disparate, Judge Arnold, in the present case, avoided the problems encountered in *Thomasian v. Thomasian*, 79 Md.App. 188, 556 A.2d 675 (1989). In *Thomasian*, the trial judge awarded rehabilitative alimony for five years stating that "[t]he question of whether or not the plaintiff can make progress toward being self-supporting can be answered during that time period." *Id.* at 193, 556 A.2d 675. We described the situation in *Thomasian* as "wherein the court awards the rehabilitative alimony intending that the decision whether it will continue to be rehabilitative or will be changed to indefinite alimony would be finally determined during that period." 79 Md.App. at 195, 556 A.2d 675. We reversed in *Thomasian*, holding that the matter needed to be remanded in order for the trial judge to determine whether at that time Mrs. Thomasian was entitled to indefinite alimony. *Id.* at 196, 556 A.2d 675.

In the case at bar, the trial court determined that appellant needed 18 months to become employed to her maximum, but even then her standard of living would be impermissibly lower than appellee's. "[S]he will not be able to close the gap.... The parties' standard of living will be unconscionably disparate. To alleviate the disparity, the Court will continue her alimony indefinitely ... reduced to $700 per month." There was evidence supporting the trial judge's actions. Thus, he did that which was impliedly suggested in *Thomasian* and avoided the pitfalls that occurred in *Holston* where only rehabilitative alimony was awarded and the evidence indicated that even after rehabilitation her standard of living would be "unconscionably disparate."

We said in *Hull v. Hull*, 83 Md.App. 218, 222–23, 574 A.2d 20, *cert. denied*, 321 Md. 67, 580 A.2d 1077 (1990), discussing the 1980 change in the approach to alimony, that "the law's concern became that of fostering the self-suffi-

ciency of both parties to the dissolved marriage.... [A]limony, when necessary, became essentially short-term and rehabilitative.... The goal is to render the party ... self-supporting so as to vitiate any further need for alimony." Judge Moylan, while determining that no alimony award was appropriate, opined that:

> In the case of rehabilitative alimony, moreover, the court would be concerned with whether, even after maximum rehabilitation had been attained, there might yet persist an "unconscionable disparity" in the relative living standards of the parties.

*Id.* 83 Md.App. at 221, 574 A.2d 20.

The trial court in the case at bar was concerned about just that type of residual disparity. While its method of resolving that concern may be unique, it was, we believe, appropriate. Its manner of awarding both types of alimony concurrently with a present decision based upon existing evidence as to a future adjustment addresses just those concerns that Judge Moylan stated in *Hull*.

While we reversed because the record was devoid of any evidentiary support for the awarding of reducing sums of alimony, we, by implication, recognized that awards could be made in reducing amounts in future years if evidentiary support exists in *Benkin v. Benkin,* 71 Md.App. 191, 524 A.2d 789 (1987). In *Benkin,* we reversed a monthly alimony award that had been established by the trial court at $750 the first year, $600 the second and $500 the third year. We said that "[t]here is nothing in the record to support a rationale for the declining amounts awarded." *Benkin,* 71 Md.App. at 204, 524 A.2d 789.

In the case at bar, there was evidence that Mrs. Coviello was a high school graduate with no college education, and had limited prior experience as an Avon representative. There was evidence of uncompleted cosmetology training (Mrs. Coviello testified that the course would take 1,500 hours (37–38 weeks) to complete). The trial judge determined that Mrs. Coviello's health problems made sedentary

office work or sales her best employment options. He found that those occupations did not require extensive training and that she should be able to find work in those jobs after no more than 18 months of training. The evidence supported that determination.

The trial judge's orders in the case *sub judice* had the effect of providing for the future as the present facts indicated would be necessary. Judge Bloom, writing for us in *Fox v. Fox,* 85 Md.App. 448, 465, 584 A.2d 128 (1991), commented on reserving the ability to make alimony awards:

> The wisdom of providing for the possibility that the future will be substantially different from that which is presently projected is exemplified by the facts of *Brashier v. Brashier,* 80 Md.App. 93, 560 A.2d 44 (1989). In that case, Judge Bishop ... pointed out that Mrs. Brashier's continued inability to alleviate certain conditions that kept her from becoming self-sufficient were unanticipated at the time of divorce. On that basis, we held that modification of the divorce order from an award of alimony for a limited period to one of indefinite duration was not an abuse of discretion.

Judge Arnold went a step further in the present case than that which was suggested in *Fox* and *Brashier.* He took the extra step because appellant's inability to completely rehabilitate herself was, unlike *Fox* and *Brashier,* presently anticipated. The trial judge, rather than reserve on the issue of the necessity for indefinite alimony, determined it necessary at the time of the decree. He also determined the degree of rehabilitation he then anticipated and made a present award as to both indefinite and rehabilitative alimony. The evidence supported his determination. We see no necessity to reserve on the issue of indefinite alimony thus generating a future proceeding if the matter can be disposed of in the instant proceeding. Indeed, Judge Arnold's approach, which given the circumstances of this case we endorse, appears to be an effective manner of resolving the interplay between rehabilitative support and indefinite sup-

port when rehabilitation will not be complete and unconscionable disparity will remain. As long as an indefinite award is made, requests for modification in the future may always be made provided an appropriate basis for such a modification occurs.

We deem it necessary to distinguish the ultimate holding here from what, at first blush, might appear to be a conflicting holding by the Court of Appeals in the child support case of *Unkle v. Unkle*, 305 Md. 587, 505 A.2d 849 (1986), that, if actually conflicting, would control. Appellant argued vigorously in her brief and in oral argument that the holding in *Unkle* forbids the type of award made in the present case. For at least two reasons, we disagree.

First, as we perceive it, the authorizing statutes are substantially different. Title 12 of the Family Law Article contains the relevant provisions for child support. Section 12-201 merely authorizes an award of child support without any provision for different types of child support.[3] Section 12-104(a) then provides that a court may modify child support "subsequent to the filing of a motion for modification" when a material change is established. Subsection (a) expressly prohibits any modification award that would apply "retroactively" prior to the date of the modification motion. Thus, as we see it, the child support statute itself expressly forbids any change prior to a subsequent motion, which must be based on a "subsequent" change in circumstances.

Since the general revisions of 1980, the statute governing alimony is distinctively different from the child support provisions of the Family Law Article. We explain.

The provisions regarding alimony are contained in Title 11 of the Family Law Article. While section 11-106(c)(2) creates a preference for rehabilitative alimony, it also expressly provides for indefinite alimony when necessary. It

---

**3.** Neither the Court of Appeals in *Unkle* nor we, in the case at bar, are concerned with *pendente lite* awards.

clearly provides that indefinite alimony can be awarded if a court finds, based upon the evidence presented, that after the party seeking alimony *"will* have made as much progress ... as can reasonably be expected, the respective standards of living ... *will* be unconscionably disparate." (Emphasis added.) As we perceive it, the statute speaks in the future tense as to the determination to be made in regards to indefinite alimony. The statute not only permits a consideration of the state of events in the future, but contemplates a present award based upon that future state of events if the evidence then before the chancellor supports such an award. The plain language of the statute does not limit the chancellor to an either/or award, rather it anticipates a resolution as to both types of awards at the initial hearing if the evidence warrants.

We also distinguish the holding in *Unkle* because the Court of Appeals based its holding prohibiting *in futuro* support modification not on the statute but on the absence of evidentiary support for the future modification. The Court of Appeals stated that the *in futuro* award "failed to account" for the factors necessary in order to make such awards. 305 Md. at 597, 505 A.2d 849. Because the award was based on the future sale of the marital home, the evidence supporting it was prohibitively speculative in that there was no way for the trial court there to know when the home would be sold, the sales price, the profit to be realized and the share of the profit which would inure to each of the parties. 305 Md. at 598, 505 A.2d 849. Contrastingly, in the case at bar, there was sufficient evidence, which we have discussed herein to support the trial court's determination that maximum rehabilitation would be realized within 18 months and that there would remain thereafter a residual unconscionable disparity.

We, therefore, conclude that the Court of Appeals holding in *Unkle* is statutorily and factually distinguishable from

the case at bar and therefore it is not controlling.[4]

In the case *sub judice*, the trial court determined, with the help of the $1,500 per month alimony for a limited period, appellant would be able to achieve her maximum rehabilitation and maximum degree of self-sufficiency. He determined that she would then still be in an unconscionably disparate position, vis-a-vis, the appellee and that after the period of maximum rehabilitation would need the indefinite sum of $700 to rectify that unconscionable disparity. As we perceive the statute, it does not dictate an either/or award of rehabilitative/indefinite alimony. Its language encompasses, and its spirit embraces, the creative approach taken by Judge Arnold in this case. We hold that it is neither error nor abuse of discretion for the trial court to award at one time what we have termed compound alimony, *i.e.*, a total sum for a period of maximum rehabilitation then a lessor sum for an indefinite period to rectify unconscionable disparity.

We, accordingly, hold that, providing there is sufficient evidentiary support, it is not error for a trial court to make simultaneous awards of rehabilitative and indefinite alimony—the rehabilitative amount to terminate at the point in the future where the evidence indicates maximum progress towards self-sufficiency will be reached with the indefinite portion of the alimony award to thereafter continue as necessary. Innovation, so long as it is supported by evidence and meets the purposes of the statute without conflict, is not to be condemned. We can perceive of few possible future problems created by such an award. It can, as future conditions warrant, be increased or decreased or eliminated all together.

Did the trial court err in its computation of the monetary award by improperly characterizing rent receipts as mari-

---

**4.** For the same factual reasons, our "reminder" in *Levin v. Levin*, 60 Md.App. 325, 337, 482 A.2d 935 (1984), of the necessity for a modification to be based upon changes in circumstances does not prohibit that which the trial court did in the case *sub judice*.

tal property and by reducing the value of marital property by deducting liquidation costs?

## The Rent

 The trial court judge found "that rent proceeds of $5,506.00 were placed in Mrs. Coviello's bank account. The rent was acquired during the marriage and constitutes marital property." Mrs. Coviello contends that the trial court committed error "because there was no evidence that the funds existed at the time of trial." She asserts that the evidence compelled a conclusion that all of the rental funds had been "disbursed on a continuing basis for marital expenses." She cites *Gravenstine v. Gravenstine,* 58 Md. App. 158, 472 A.2d 1001 (1984), for the proposition that property must exist as of the date of divorce in order to be considered as marital property. We said, in *Gravenstine:* "[M]arital property which generates a monetary award must ordinarily exist as "marital property" as of the date of the final decree of divorce based on evidence adduced at trial on the merits.... Therefore, property disposed of before commencement of the trial under most circumstances cannot be marital property."[5] *Gravenstine,* 58 Md.App. at 177, 472 A.2d 1001 (footnote omitted).

Mrs. Coviello argues that the only evidence before the trial court was that the rental sums were spent as received on marital expenses, such as groceries, and that none of those sums were deposited in the account at issue. Appellee argues that the court found that the rental sums, $5,506, went into the bank account over the years and that Mrs. Coviello testified that she had in her individual bank accounts at present sums totaling over $5,506, therefore, the trial court was correct. Appellee does not now argue that appellant testified contrary to what she asserts in her brief; only that the court found to the contrary.

---

5. In *Gravenstine,* we, in a footnote, acknowledged that we were not addressing the intentional dissipation of marital property. Likewise, in the case at bar, there is no issue of intentional dissipation.

The record before us reflects that Mrs. Coviello testified extensively during direct, cross and rebuttal examination that the rental money had not been placed in any of the savings accounts but had been used for groceries. While Mr. Coviello's testimony was not nearly so extensive, he did testify in respect to the rent money that:

> I noticed in 1982 that the money was put in an account and an account with her name only. We had a rather loud discussion about that and for the next two years, she changed those accounts so that they had my name on them.... The following year [1985], that money disappeared into her private accounts and was never seen again.

> \* \* \* \* \* \*

> [I]t comes to about $5500.00—$5600.00 of money that should be in those accounts that was joint. Now, she claims to have given her daughter 2,000 of that money when she was married....

> I have no objection to her giving her daughter that money. It was saved for the purpose of our being able to afford a marriage for her, but what about the rest?

> \* \* \* \* \* \*

> Q ... [W]hat account was it kept in?

> A It was kept in the Baltimore Savings accounts, Baltimore Savings Bank.

The chancellor thus had before him testimony from appellant that the rent money had never been deposited in the Baltimore Savings Bank [6] and appellee's response to the contrary. Appellant's testimony at trial indicated that more than the rental sum claimed as marital property remained in the various accounts at the bank.

---

6. Because appellant's testimony was so extensive, we do not repeat it here. She was emphatic that the rent money had never been placed in the Baltimore County Bank accounts asserting that those accounts were funded primarily by inheritances and later by alimony received from appellee.

■ We recently said in *Hollander v. Hollander*, 89 Md.App. 156, 597 A.2d 1012 (1991), that: "[t]he trier of fact is not bound to accept the testimony of any witness even if it is uncontradicted." *Id.* at 175, 597 A.2d 1012 (quoting *Shapiro v. Chapman*, 70 Md.App. 307, 318, 520 A.2d 1330 (1987)). Similarly, the trial court in the case at bar was not bound to accept the version of the application of funds argued by Mrs. Coviello merely because her testimony was much more extensive than that of Mr. Coviello. In *Hale v. Hale*, 74 Md.App. 555, 569, 539 A.2d 247, *cert. denied*, 313 Md. 30, 542 A.2d 857 (1988), we restated the Maryland law with respect to assessing conflicting testimony: "Assessing the credibility of witnesses is the role of the trial court, not the appellate courts." (Citation omitted.) See also *Eckstein v. Eckstein*, 38 Md.App. 506, 516, 379 A.2d 757 (1978), where we said: "We are also bound by the oft enunciated principle that the credibility of witnesses is primarily for the trier of facts and the appellate courts of Maryland will only overrule the findings of fact of a trial judge when they are clearly erroneous." (Citations omitted.)

The trial judge in the case *sub judice* in his assessment of the credibility of the witnesses, apparently attributed more weight to the testimony of Mr. Coviello that the sums had been deposited into the accounts in which there remained a balance of more than those sums. He stated: "rent proceeds of $5,506.00 were placed in Mrs. Coviello's bank account. The rent was acquired during the marriage and constitutes marital property." We cannot say that the trial judge was clearly erroneous in his finding.

It may be that other monies were also deposited in those accounts as appellant testified. It may also be that the portion of the deposits attributable to rent, in fact, has been expended, but appellant did not attempt to separate any such deposits because her argument below (and here) was that the rent monies had not been deposited in the accounts. We said in *Hollander* that the proper method of determining marital property is the source of funds theory. We further held, however: "Because Dr. Hollander allowed

marital and non-marital funds to commingle to the point where he could not prove non-marital funds were used to purchase the home, he must bear the loss of its non-marital status." *Hollander,* 89 Md.App. at 175, 597 A.2d 1012. *See also Melrod v. Melrod,* 83 Md.App. 180, 187, 574 A.2d 1 (1990). In *Hollander,* the husband could not prove the use of non-marital funds. In the case at bar, no attempt was made to distinguish between the rent monies the court found were deposited and the inheritances, and other monies that were deposited, because appellant chose to rely completely on her position that no rent funds had been deposited. An all or nothing position contains, by definition, no fall-back position. See also *Melrod,* 83 Md.App. at 188, 574 A.2d 1, where we said: "If ... she chooses to commingle marital and non-marital funds to the point that direct tracing is impossible, ... her property may lose its non-marital status." Accordingly, we perceive no error by the trial court in finding that the rent receipts were marital property and in computing their sum of $5,506 as marital property then contained in the account(s) at issue.

### Liquidation costs

The parties agreed at trial that the fair market value of the Lakeland home was $172,631 but appellee argued to the trial court that the fair market value should be reduced to $160,547 because of anticipated 7% real estate commissions. The parties also agreed that the fair market value, without real estate commissions, of the Lerner home was $147,795. Appellee again asserted that it should be reduced by 7% to $137,449. The trial court reduced the value of the Lakeland home by one-half of the amount of commissions and reduced the fair market value of the Lerner home by the entire 7%. In doing so, he erred.

In *Green v. Green,* 64 Md.App. 122, 494 A.2d 721 (1985), Mrs. Green argued the converse of the situation here extant. She argued that various closing costs faced by Mr. Green amounting to $5,934 should have been added to the value of the house where the trial court was relying on

"cost basis" for present value. Judge Karwacki stated for the Court: "The [trial] court apparently concluded that none of these expenses increased the value of the property.... [T]he [trial] court was not clearly erroneous." *Id.* at 143, 494 A.2d 721. Mrs. Green also asserted that the value should have been increased by a sum expended by Mr. Green to improve the landscaping. We held that the trial court had not erred in omitting the sum because "[t]here was no evidence that this expenditure increased the value of the property *as of the time of its valuation at trial....* " *Id.* at 143, 494 A.2d 721 (emphasis added). *See also Rosenberg v. Rosenberg,* 64 Md.App. 487, 526, 497 A.2d 485, *cert. denied,* 305 Md. 107, 501 A.2d 845 (1985). And see *Dobbyn v. Dobbyn,* 57 Md.App. 662, 676, 471 A.2d 1068 (1984), where we said:

> [P]roperty interests ... are to be adjusted "when a marriage is dissolved." ...
>
> \* \* \* \* \* \*
>
> [M]arital property ... [is] to be valued as of the date of the decree of absolute divorce based upon the evidence produced at trial.[7]

Properties may or may not be sold through the services of a real estate broker. Brokers may or may not charge 7% commissions. On the date of the valuation, this evidence, at best, was impermissibly speculative. Accordingly, the trial court should not have reduced the value of the properties by deducting from the present value, commissions, or portions of commissions that may or may not be due in the future in percentages that may or may not be 7%. On remand, the trial court shall be required to revalue the Lerner home and the Lakeland home. As that might constitute a change, the trial court, on remand, may have to make changes in the monetary award. That change will require

---

7. *Dobbyn* and our cases since have emphasized that the *Dobbyn* rule is a general rule and is not, under certain circumstances, always a hard and fast rule. There is nothing extraordinary about the property being valued in the case at bar. Thus, we adhere to the *Dobbyn* rule.

the trial court to reconsider whether the alimony awards should be adjusted to reflect the changes in the parties' status, if any, caused by the modification in the monetary award.

Was the denial of attorney's fees an abuse of discretion?

■ The trial court denied appellant's request for counsel fees without making any finding or otherwise giving its reasons. We, thus, are required to review the record before us.

In *Wassif v. Wassif*, 77 Md.App. 750, 765, 551 A.2d 935 (1989), we held that under the facts there, the wife was entitled to an award of suit money and "a substantial portion of her attorneys' fees...." On remand, the *Wassif* trial court was directed to determine the amount. The facts in *Wassif* indicated that the marital assets were divided equally. In the case at bar, the appellee received approximately 60% and the appellant approximately 40% of the value of the marital assets. Appellee also retains substantial non-marital assets. Additionally, in the case at bar, the husband earned approximately $70,000 per year and the wife was unemployed, and, in light of the award of rehabilitative alimony, relatively unemployable for a period of 18 months. The alimony awarded by the trial court was for rehabilitative purposes and for normal living expenses. She has no present ability to pay her counsel fees without involving her limited assets. In *Wassif*, we also found an abuse where the wife was to receive a monetary award of $83,976.50 plus alimony of $500.00 plus one-half of the jointly owned assets. *See also Rogers v. Rogers*, 80 Md. App. 575, 594, 565 A.2d 361 (1989). We hold that the trial court abused his discretion when he denied counsel fees to appellant. On remand, the trial court will reconsider and determine the appropriate amount of counsel fees to be awarded to appellant.

Cross Appeal

Did the trial court abuse its discretion in awarding alimony?

■ In *Bricker v. Bricker*, 78 Md.App. 570, 572–73, 554 A.2d 444 (1989), we restated the definition of "technical" alimony as given in *Simpson v. Simpson*, 18 Md.App. 626, 628–29, 308 A.2d 410 (1973). We opined that the *Simpson* definition of technical alimony was what has now become defined as "indefinite alimony." In *Bricker*, Judge Bell furnished a historical treatment of the 1980 revision which substantially changed the domestic law of this State. We shall not repeat it here as the cases since 1980 have substantially conformed to the standards of, and purposes for, that statutory change.

Cross-appellant relies heavily on the awarding of a $32,-426.44 monetary award to cross-appellee as one reason why indefinite alimony should not have been awarded implying that proper consideration was not given to it in the rendering of the indefinite alimony.

We said in *Bangs v. Bangs*, 59 Md.App. 350, 370, 475 A.2d 1214 (1984):

> In the instant case, the chancellor did not indicate that he was *ignoring* the alimony award when he made the monetary award. He simply did not mention it. A chancellor is not required to articulate every step in his thought process. A judge is presumed to know the law and to properly apply it. That presumption is not rebutted by mere silence. [Emphasis in original, citation omitted.]

*See also Campolattaro v. Campolattaro*, 66 Md.App. 68, 79, 502 A.2d 1068 (1986). See also our reference to Judge Bell's synopsis of our cases in *Rock v. Rock*, 86 Md.App. 598, 587 A.2d 1133 (1991), and our discussion of the importance we place on the fact finder's weighing of the evidence and credibility assessments.

Maryland Code Annotated Family Law Article section 11–106(b) establishes the matters that a trial court must consider in making or denying alimony awards. In subsection (c), it provides for the circumstances that must exist for an award of indefinite alimony.

(1) due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting; *or*

(2) even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate. [Emphasis added.]

The trial court, in its memorandum opinion, discussed the duration of the marriage, the financial contributions to it, the reasons for the termination of the marriage, the age of the parties, their employment status, their respective incomes, or lack thereof, their health, Mrs. Coviello's potential to be self-supporting, *i.e.*, education, experience and health, Mr. Coviello's ability to pay, and Mrs. Coviello's ability to rehabilitate herself.

He also discussed the reasoning behind his decisions relating to the marital property and his decision that a monetary award was necessary. In the same memorandum opinion in which he decided to award alimony, he made a monetary award after a lengthy discussion of the respective properties of the parties. He obviously considered the alimony award and monetary award together. His ultimate decree conformed to his memorandum opinion. As in *Rock,* we cannot conclude that his award of indefinite alimony was erroneous.

While we affirm the trial court's findings in respect to rehabilitative and indefinite alimony, because we shall vacate the monetary award, the trial court may on remand decide to adjust those awards in light of any adjustment in the amount of the monetary award.

MONETARY AWARD VACATED; JUDGMENT DENYING ATTORNEY'S FEES VACATED; CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE PAID 50% BY APPELLANT AND 50% BY APPELLEE.

BISHOP, Judge, dissenting.

I dissent because I disagree that the trial court may award what the majority has termed "compound alimony," *i.e.* rehabilitative alimony for a specified period with indefinite alimony continuing thereafter. Awards of rehabilitative alimony and indefinite alimony are mutually exclusive. In lieu of making a compound award, the trial court could have awarded indefinite alimony only, or it could have awarded rehabilitative alimony for a specified period and reserved the right to award indefinite alimony. It should not have mixed, however, the two kinds of awards.

Section 11-106(b) of the Family Law Article sets forth required considerations in making a determination of rehabilitative alimony. These considerations include, *inter alia,* the ability of the party seeking alimony to be wholly or partly self-sufficient; the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment; and the physical and mental condition of each party. The criteria for making an award of indefinite alimony are substantially different. The court may award indefinite alimony if it finds that because of age, illness, infirmity or disability, the party seeking alimony cannot be expected to make substantial progress toward becoming self-supporting, *or* if it finds that even after the party seeking alimony will have made as much progress toward becoming self-supporting as can be reasonably expected, the respective living standards of the parties will be "unconscionably disparate." Md.Fam.Law Code Ann. § 11-106(c) (1991). The functions of the two kinds of alimony awards are different. Rehabilitative alimony was designed to supplement the income of the recipient while he or she is becoming self-supporting. Indefinite alimony, on the other hand, was designed to alleviate "unconscionable disparity" between the living conditions of the parties that exist, even after the recipient has made as much progress as possible toward becoming self-supporting. Unlike the majority, I believe that these two purposes cannot be accomplished simultaneously.

The majority can point to no authority that directly supports the compound award in this case. Authority does exist, however, for the type of award I suggest in lieu of a compound award—namely an award of indefinite alimony only or an award of rehabilitative alimony and reservation of the indefinite award.

### Indefinite Alimony

After "discussing at some length the relative premarital and marital incomes of the parties and their abilities to earn income after the marriage ... [the trial court] opined" that even after Mrs. Coviello found suitable employment, she would not be able to "close the gap between the parties' earning capacities" and that the "parties' standards of living will be unconscionably disparate." If the trial court's determination is not clearly erroneous, it would be error not to make an award of indefinite alimony.

In *Holston v. Holston*, 58 Md.App. 308, 473 A.2d 459 (1984), for example, we determined that the chancellor erred in not awarding indefinite alimony. The facts in *Holston* were as follows. When the parties decided to marry, Mrs. Holston, who was in her sophomore year of college, quit school and took a job as a bank teller and then as a secretary so her husband could continue his education. Mrs. Holston had not worked outside the home, however, since 1967 when her husband was stationed in North Carolina. At the time of the divorce, Dr. Holston was an assistant professor at the University of Maryland Dental School. He practiced dentistry through a family practice program and held numerous consulting positions. His gross income was $87,880 in 1981 and $86,343 in 1982. At the time Mrs. Holston left the job market in 1967, she was earning $5,000 as a secretary at the University of Maryland Medical School. At the time of trial, secretaries at the university were earning approximately $13,000.

The chancellor awarded Mrs. Holston alimony for three years at $150 per week, but declined to award indefinite alimony. This Court reversed the decision of the chancellor

and held that Mrs. Holston was entitled to indefinite alimony. We explained:

> Even if appellant [Mrs. Holston] re-entering the job market after fifteen years, would be able to gain employment at a similar salary, her earnings would be less than 15 per cent those of appellee. There is nothing in the evidence to indicate that appellant would ever be able to eliminate or even substantially diminish such disparity. Assuming appellant used her three years of alimony to return to college, receive a decree and acquire a marketable skill, it is questionable whether after graduation she could earn a salary even approaching appellee's earnings. Compounding the difficulty of obtaining an education and a marketable skill is the necessity to provide and care for five minor children. Reading the record, we see no reason to expect that if alimony terminates after three years the respective standards of living of the parties would not then be "unconscionably disparate."

58 Md.App. at 323, 473 A.2d 459. In the case *sub judice*, the chancellor determined that Mrs. Coviello's most realistic employment option was sedentary office employment. The chancellor further determined that even after Mrs. Coviello was suitably employed there would still be a gap in the parties' earning capacities and that the parties' standards of living would be unconscionably disparate. Thus, in accordance with *Holston*, Mrs. Coviello is entitled to receive indefinite alimony in whatever amount will compensate her for the unconscionable disparity.

### Reservation of Indefinite Alimony

There is support for the authority of the chancellor to award rehabilitative alimony now and reserve judgment on an award of indefinite alimony. In *Turrisi v. Sanzaro*, 308 Md. 515, 520 A.2d 1080 (1987), the Court of Appeals held that a chancellor's power to reserve judgment on an award of indefinite alimony was not abrogated by the 1980 Alimony Act. In *Turrisi*, the parties were both medical doctors. Shortly after the parties were married, the wife was diag-

nosed as having multiple sclerosis. The wife testified that as a result of her disease she was forced to abandon surgery and hospital work. Instead, she worked at an office family practice for two and a half to four hours daily for five days a week. She had to use a cane to walk, could not walk straight, could not control her bowels or bladder, and needed special assistance and arrangements in order to conduct her practice. There was medical testimony that there is no cure for multiple sclerosis and that it is a chronic progressive disease. It was probable that the wife would be totally disabled in less than five years, and perhaps in less than two years. Despite her prognosis, the wife testified that at the time of the hearing she was self-supporting. She requested, however, that if in the future she were unable to support herself that the court order her husband to pay support.

On this testimony, the chancellor determined that the wife had declined an immediate award of alimony, and he held that he did not have power to reserve the question of future alimony. The Court of Appeals reversed. In a scholarly opinion that discussed alimony in historical perspective, particularly in light of the 1980 Alimony Act, Judge Adkins held that the chancellor had inherent power to reserve judgment as to alimony. Judge Adkins explained:

> For example, facts before a court may demonstrate no present basis for either rehabilitative or indefinite alimony. But those same facts may show that a highly probable basis for awarding one or the other will exist in the immediate future. Under such circumstances, we see no reason why reservation would be inconsistent with the purposes of the [1980 Alimony Act].

308 Md. at 527, 520 A.2d 1080. On the authority of *Turrisi,* the chancellor in the case *sub judice* could have reserved an award of indefinite alimony.

Moreover, if the chancellor awarded rehabilitative alimony now, the chancellor could have later modified the award to an award of indefinite alimony. *Brashier v. Brashier,*

80 Md.App. 93, 560 A.2d 44 (1989), *cert. denied,* 317 Md. 542, 565 A.2d 670. The facts of *Brashier* were as follows. During the year before the parties were married, Mrs. Brashier began to develop a nervous condition that stemmed from anxiety, depression and agoraphobia. She received psychiatric treatment. Approximately two years after the marriage, Mrs. Brashier's illness forced her to retire from her job of eleven and a half years as a contract specialist with the federal government. The parties' marriage deteriorated, and Mrs. Brashier brought suit seeking an absolute divorce and indefinite alimony. The chancellor refused to award indefinite alimony, instead, he awarded limited alimony in the amount of $300 per month for three years. Mrs. Brashier later filed a Petition for Modification to increase and extend her alimony and to have Mr. Brashier furnish health insurance coverage. At a hearing before a master on the Petition, Mrs. Brashier presented evidence that there had been no change in her depressive condition and that her condition prevented her from becoming gainfully employed. A psychiatric expert opined that Mrs. Brashier was not functioning at a level that would allow her to perform adequately in an employment situation. Following the hearing, the master recommended that the divorce order be modified to award Mrs. Brashier indefinite alimony of $300 per month. The circuit court adopted the master's recommendations.

On appeal, this Court affirmed the order of the circuit court modifying the decree and awarding Mrs. Brashier indefinite alimony. We explained:

> [T]he master found significant Mrs. Brashier's lack of improvement since the divorce. That fact is critical considering that the trial court's previous award of temporary alimony to Mrs. Brashier was made with the expectation that she would improve. Had that been the case, Mrs. Brashier might have become self-sufficient. Unfortunately, that circumstance never occurred.
>
> We therefore reject Mr. Brashier's contention that since the evidence presented at the modification hearing

was, as the master conceded "much the same" as that presented at the divorce trial, there was no change justifying an extension of alimony payments to Mrs. Brashier. The "change" involved here is one of expectation concerning Mrs. Brashier's prognosis for recovery. Notwithstanding that most of the adverse conditions noted by the master either existed at the time of the divorce or were then anticipated, Mrs. Brashier's continued inability to alleviate these conditions was not anticipated.

* * * * * *

We find no abuse of discretion in the trial court's grant of indefinite alimony in view of Mrs. Brashier's continued psychiatric disability and the hindrance it has been in her effort to become self-sufficient.

80 Md.App. at 100–01, 560 A.2d 44.

Finally we point out that contrary to the contention of the majority, *Thomasian v. Thomasian*, 79 Md.App. 188, 556 A.2d 675 (1989), does not preclude the chancellor from awarding rehabilitative alimony and reserving judgment on the award of indefinite alimony.

In *Thomasian* we held that rehabilitative alimony could not be awarded in lieu of proof of entitlement to indefinite alimony pending a decision of the dependent spouse's employability and ability to become self-supporting during the term of rehabilitative alimony. The domestic relations master in *Thomasian* determined that Mrs. Thomasian had an eye condition that rendered her unemployable in her field and that there was no evidence of her employability in any other field. The master recommended, therefore, that Mrs. Thomasian receive indefinite alimony in the amount of $2350 per month. The trial court, on the other hand, characterized the testimony concerning Mrs. Thomasian's vision problems as "inconclusive." It ordered, however, five years of rehabilitative alimony and stated that whether Mrs. Thomasian could make progress toward being self-supporting could be answered during that time period. We reversed and explained:

Although § 11–107(a) provides a mechanism whereby the period of rehabilitative alimony may be extended, it contemplates an extension based upon some changed circumstances occurring during the period when rehabilitative alimony is being paid. It does not contemplate the situation presented here wherein the court awards the rehabilitative alimony intending that the decision whether it will continue to be rehabilitative or will be changed to indefinite alimony would be finally determined during that period. The trial judge did not cite any authority permitting him to structure the award as he did, and we know of none.... The matter must be remanded for further proceedings, specifically, for a determination of whether, *at this time*, Mrs. Thomasian is entitled to indefinite alimony.

79 Md.App. at 195–96, 556 A.2d 675. (Footnote omitted) (Emphasis supplied).

The error committed by the chancellor in *Thomasian* was to award rehabilitative alimony after the chancellor had already determined that the evidence was "inconclusive." A chancellor may not award rehabilitative alimony when a party is not entitled to it just so that the chancellor can "wait and see" whether the party will later be entitled to indefinite alimony. Where the evidence currently does not support an award of indefinite alimony, but the chancellor believes such an award may be proper in the future, the appropriate course of action is for the chancellor to reserve judgment on the award of indefinite alimony. Where an award of rehabilitative alimony is justified, *Thomasian* does not prohibit the chancellor from awarding rehabilitative alimony and reserving judgment on the issue of indefinite alimony.

Based on the foregoing, I would reverse on the first issue; however, I concur with the disposition of the other three issues.