DEBORAH S. EYLER, J.
 

 By Judgment of Absolute Divorce entered on October 18, 2000, the Circuit Court for Frederick County directed Steven G. Francz (“Steven”), the appellant, to pay Deborah J. Francz (“Deborah”), the appellee, rehabilitative alimony of $1,400 per month for 23 months, effective October 1, 2000, through August 31, 2002, and ruled that “the issue of indefinite alimony is hereby reserved for later determination.”
 

 On September 10, 2002, Deborah filed a “Petition to Establish Indefinite Alimony.” The court granted the petition and entered an order directing Steven to pay Deborah $1,000 per month in indefinite alimony. Steven challenges that decision on appeal. For the following reasons, we shall vacate the court’s order and remand the case for further proceedings not inconsistent with this opinion.
 

 
 *680
 
 FACTS AND PROCEEDINGS
 

 Steven and Deborah were married on September 2, 1978. Steven had graduated from high school and completed some night school college classes. Deborah had graduated from high school and completed two years of college.
 

 The parties’ marriage produced two children: Cherise, born on August 31,1984, and Lindi, born on April 21, 1986. During the marriage, Steven and Deborah lived in Frederick County and maintained a modest lifestyle. Deborah stayed at home, caring for the parties’ children, until the 1990’s, when she started working part time in clerical jobs. Steven worked as a computer hardware engineer.
 

 The parties separated on February 4, 1998. They each were 40 years old. Steven moved out of the marital home, and Deborah stayed there, with the children, who were then 13 and 11 years of age.
 

 On May 13, 1999, in the Circuit Court for Frederick County, Steven filed a complaint for absolute divorce on the ground of adultery. Deborah responded by filing a countercomplaint for absolute divorce, also on the ground of adultery. For the rest of that year, the parties waged battle on every front. Eventually, they reached an agreement for joint legal custody of the children, with physical custody in Deborah and visitation for Steven.
 

 All other issues, including Deborah’s request for alimony, went to a merits trial, which began on February 1, 2000. The trial continued for two additional days that month; two days in May 2000; two days in August 2000; and three days in September 2000. The court then took the case under advisement.
 

 On September 29, 2000, the trial court reconvened and the judge ruled from the bench on all issues. After finding that each party had committed adultery after the separation, the court granted Steven a divorce on that ground, because he had
 
 *681
 
 filed his complaint first.
 
 [1]
 
 The trial judge then turned to the issue of alimony, and, addressing the factors set forth in Md.Code (1999 RepLVol.), section 11-106(b) of the Family Law Article (“FL”), made the following findings.
 

 At the time of trial, the parties were 42 years old and in good health.
 
 [2]
 
 Steven was employed by Visual Networks, Inc., and was earning $96,000 per year, with the possibility of earning a bonus of between $5,000 and $10,000. Deborah was earning $6,000 per year working part time at a gym and at a WalMart store. She did not have any health problems that interfered with her ability to hold full-time employment. The trial judge found that she had the present ability to earn $12,000 per year, and imputed that amount of income to her.
 

 Crediting the opinion of a vocational rehabilitation expert who testified at trial, the trial judge found that, if Deborah attended courses at Frederick Community College (“FCC”), she would within a two-year period be able to obtain a job paying $25,000 to $30,000 per year. The trial judge further credited the expert’s opinion that Deborah could “secure[ ] the necessary education for her rehabilitation through Frederick Community College” while working full time and earning $12,000 per year, and at a cost of no more than $4,500.
 

 The trial judge found that the marriage had lasted 22 years, including the two-year separation; that the reasons for the break-up of the marriage were “neutral”; that Deborah would have use and possession of the marital home through June 2001; that unless the parties agreed otherwise the house then would be sold and the proceeds, estimated at $30,000, would
 
 *682
 
 be equally divided; that Steven’s 401 (k) retirement fund would be equally divided, by means of a Qualified Domestic Relations Order (“QDRO”); that Steven did not have debt and Deborah did have credit card debt; that the parties contributed equally to the marriage; and that the parties had virtually no assets other than the equity in their house.
 

 After considering the findings on these factors, the trial judge ruled:
 

 [Deborah] is awarded definite rehabilitative alimony. It’s in the amount of $1,400 per month. That commences October 1st, 2000 and goes through August 31st, 2002. That is one month short of the two years. That takes into consideration my finding of her ability to earn at least a thousand dollars per month on her own even while upgrading her education and attending Frederick Community College. I also find, however, that the standard of living ... [Steven’s] earning $96,000 per year and her earning approximately $27,500, which is the midway between the testimony of the ... vocational rehabilitation expert testified earlier, would be unconscionably disparate. Therefore, I am reserving on the issue of indefinite alimony. I’m doing that because you can’t fix a number at this time. When the rehabilitative alimony expires, if the parties utilize or follow the order, the house will have been sold. Her housing expense may be greater or it may be less. They’ll have whatever equities are from that, and I believe that the one child will have reached the age of 18 by that date or very close to the age of 18 by the conclusion of the alimony.
 

 On October 17, 2000, the court issued a “Judgment for Absolute Divorce,” entered the next day, memorializing its oral ruling. With respect to alimony, the judgment stated:
 

 ORDERED that effective October 1, 2000, and terminating on August 31, 2002, [Steven] shall pay to [Deborah] the sum of One Thousand Four Hundred Dollars ($1,400.00) per month for rehabilitative alimony; and it is further
 

 ORDERED that the issue of indefinite alimony is hereby reserved for later determination.
 

 
 *683
 
 The court did not make a monetary award. It granted Deborah $1,540 per month for child support, in accordance with the Maryland guidelines; and ordered Steven to pay $10,000 of Deborah’s attorneys’ fees and an outstanding $800 therapy bill for the children.
 

 On September 10, 2002, ten days after the 23-month rehabilitative alimony award expired, Deborah filed a “Petition To Establish Indefinite Alimony” (“petition”). She alleged that she had obtained full-time employment at a $9.00 hourly wage; that Steven was earning at least $96,000 a year; and that she had “made as much progress toward becoming self-supporting as reasonably could be expected,” but the parties’ standards of living nevertheless were “still unconscionably disparate.”
 

 Steven filed a motion to dismiss the petition, on the ground that Deborah had not alleged a change in circumstances that would produce a harsh and inequitable result, as necessary to support a motion to extend alimony, under FL section 11-107(a) and
 
 Blaine v. Blaine,
 
 336 Md. 49, 646 A.2d 413 (1994); and on the ground of improper service of process. The motion was denied without a hearing, on October 28, 2002. Steven then filed an opposition to the petition.
 

 On May 1, 2003, the motion court held an evidentiary hearing on the petition.
 
 [3]
 
 Steven and Deborah testified and numerous documents were moved into evidence. The motion court held the matter
 
 sub curia.
 

 In a written memorandum opinion and order dated July 24, 2003, and entered the next day, the motion court granted Deborah’s petition and ordered Steven to pay $1,000 per month in indefinite alimony, commencing as of the date of filing (September 10, 2002). In a section of its opinion entitled “Findings of Fact,” the motion court recited the procedural
 
 *684
 
 history of the case and the factual findings made by the trial judge on September 29, 2000, after the merits trial.
 

 Although not included under that same heading in its opinion, the motion court made factual findings about events that had transpired between October 2000 and May 1, 2008. During that time, Deborah made one telephone call to FCC, about financial aid, for which she was not qualified. Otherwise, she took no steps to attend FCC or any other college or educational program or course. Deborah attended two job seminars and claimed to have applied for many jobs. She could not produce any documents to support her testimony about job applications, however. The motion court found that Deborah had “failed to avail herself of the resources available at FCC, Job Training Agency, or any other employment services.”
 

 Deborah’s work history from the time of the divorce to the time of the evidentiary hearing on the petition was as follows. From October 2000 to November 2001, notwithstanding that she had been found capable of working full time and earning $12,000 per year, Deborah continued to work part time in the same jobs (at a gym and at a WalMart). From November 2001 to August 2002, she stopped working altogether. In August 2002, a few weeks before the rehabilitative alimony payments ended, she took a job working full time as a cashier at a Honda Dealership. At first, she was paid $9.00 per hour; by the time of the hearing, she was earning $9:50 per hour, which comes to $19,760 per year.
 

 The marital home had been sold and the proceeds divided. Deborah claimed that she spent her share of the proceeds to pay lawyer’s fees. Yet, she filed for bankruptcy in February 2001 and all her debts, including her lawyer’s fees, were discharged in that proceeding. She liquidated her share of Steven’s 401K account and used the funds to repay loans she claimed to have received from friends and family members. She could not produce any documentary evidence of the loans, however.
 

 The motion court found that Deborah “ha[d] not made efforts to rehabilitate herself during the period in which she
 
 *685
 
 was receiving rehabilitative alimony” and “ha[d] not done her part in equity.” It further found that Deborah did not have any medical problems that interfered with her ability to work full time.
 
 [4]
 

 Steven still was working in the technology industry. He had changed employers, however, and was earning $109,000 per year.
 

 After addressing the facts, the motion court turned to the issue of the proper legal standard to apply in deciding Deborah’s petition. It concluded that the petition was not a motion to extend alimony, under FL section ll-107(a), because the trial judge, in his oral ruling on September 29, 2000, had found that, even after Deborah would have reached her maximum projected income upon educational rehabilitation, there would be an unconscionable disparity in the parties’ standards of living, and then reserved on the issue of indefinite alimony only because he could not determine the proper amount of indefinite alimony. The motion court further concluded that this ruling constituted a decision to grant indefinite alimony, and a reservation only on the proper amount of indefinite alimony:
 

 The issue of indefinite alimony was decided at the divorce hearing 3 years ago. That matter is
 
 res judicata,
 
 and the court should not review any change in circumstances in determining whether to award indefinite alimony. Rather, the court should review the current circumstances in determining what indefinite alimony is appropriate, its necessity having been determined at the time of the divorce.
 

 
 *686
 
 The motion court went on to state: “The determination of whether to award indefinite alimony having been made at the time of the divorce, the remaining determination is what alimony to award.” It decided that, based on the evidence presented at the merits trial in 2000 that, by 2002, after attending classes at FCC, Deborah would be able to obtain a job paying $27,500 per year, and the evidence presented in 2002 that Steven was earning $109,000 per year, that $1,000 per month was an appropriate amount of indefinite alimony.
 

 Steven filed a timely notice of appeal. We have combined and reworded his questions presented, as follows:
 

 I. Did the circuit court err in denying his motion to dismiss on the basis of lack of personal jurisdiction?
 

 II. Did the circuit court err in ruling that a decision to award indefinite alimony was made in 2000 and was
 
 res judicata;
 
 that Deborah therefore could be awarded indefinite alimony without showing a change in circumstances; and that the court’s function in ruling on Deborah’s 2002 petition merely was to set the proper amount of indefinite alimony?
 

 We shall include additional facts in our discussion, as necessary.
 

 DISCUSSION I.
 
 Personal Jurisdiction
 

 As stated above, the Judgment of Absolute Divorce was entered on October 18, 2000. Neither party filed a notice of appeal. In late 2000 and early 2001, there were some post-judgment proceedings concerning the QDRO payments on the mortgage on the family home, and child support.
 

 On March 5, 2001, a docket entry was made stating, “No Pro Se Parties when Case Closed.” (There is no prior entry stating that the case was closed). About 18 months later, on August 12, 2002, docket entries were made stating, “Attorney
 
 *687
 
 Appearance Terminated,” for each attorney, listed individually, who at one time had entered an appearance in the case. That included Steven’s attorney-of-record (“Steven’s attorney”) at the time of the merits trial. Apparently, the appearances were stricken pursuant to Rule 2-182(d), which provides: “When no appeal has been taken from a final judgment, the appearance of an attorney is automatically terminated upon the expiration of the appeal period unless the court, on its own initiative or on motion filed prior to the automatic termination, orders otherwise.”
 

 Deborah filed her petition three weeks later, on September 10, 2002. She sent it by first class mail to Steven’s attorney. There is no dispute that Steven’s attorney received the petition in the mail.
 

 On October 4, 2002, Steven, by that same attorney, filed a motion to dismiss, on a number of grounds, one of which was “[t]hat [Deborah] failed to follow proper rules of procedure in the service of her Petition.” In a supporting memorandum of law, citing Rule 2-121, Steven argued that his attorney’s appearance had been stricken, in conformity with Rule 2-132(d), and therefore it was necessary for Deborah to personally serve him with the petition. Because she did not personally serve him, but instead mailed the petition to his former (but by then again present) lawyer, service was improper. Steven filed a separate request for a hearing on his motion to dismiss.
 

 Deborah timely responded to the motion to dismiss, but her opposition did not address the issue of service of process. On October 24, 2002, the court issued an order denying the motion to dismiss. (The order never was entered in the docket.) On November 21, 2002, Steven filed an answer to the petition.
 

 On appeal, Steven contends that the motion court lacked personal jurisdiction over him and, therefore, its July 25, 2003 judgment was “void.” His argument is a three-step process: because he no longer was represented by counsel, Deborah was required to “serve” him by mailing the petition to him, not
 
 *688
 
 to his former attorney; the consequence of ineffective “service of process” is a lack of personal jurisdiction; therefore, the court did not have personal jurisdiction over him and its judgment was void.
 
 [5]
 

 The personal jurisdiction argument Steven advances on appeal was not made below. Neither his motion to dismiss, with supporting memorandum, nor any other filing mentioned personal jurisdiction. By not raising the issue of personal jurisdiction below, Steven failed to preserve it for review. Rule 8—131(a). While the issue of subject matter jurisdiction may be raised at any time, that is not the case with the issue of personal jurisdiction.
 
 See Jones v. State,
 
 379 Md. 704, 712, 843 A.2d 778 (2004) (noting that under Maryland Rule 8-131(a) subject matter jurisdiction may be raised at any time);
 
 Lane v. State,
 
 348 Md. 272, 278, 703 A.2d 180 (1997) (same).
 
 Compare
 
 Rules 2-322
 
 and
 
 8-131(a).
 

 We hasten to point out that Steven’s personal jurisdiction argument on appeal and the service argument he made below, though different, are both premised on misunderstandings of the law. “Service of process” and service of a pleading or other paper are not the same thing. “Process” is “any written order issued by a court to secure compliance with its commands or to require action by any person.... ” Rule 1-202(u). It includes a summons or a subpoena.
 
 Id.
 
 The contents of process and the proper methods of service of process are governed by Rules 2-114 and 2-121 to 2-126, respectively.
 

 A pleading is a complaint, countercomplaint, cross-claim, third-party complaint, an answer, an answer to a counterclaim, cross-claim, or third-party complaint, or a reply to an answer. The “original pleading” is “the first pleading filed in an action against a defendant.” Rule l-202(q). The service of process rules make plain that the content of process includes an original pleading.
 
 See
 
 Rule 2-112.
 

 
 *689
 
 By contrast, Rule 1-321—not the service of process rules— governs the service of pleadings and papers other than original pleadings. Deborah’s petition was not an original pleading, because it was not the first pleading filed in the action against Steven. (That pleading was Deborah’s countercomplaint for absolute divorce, filed in 1999.) Moreover, the petition did not seek new or additional relief that was not sought in Deborah’s original countercomplaint.
 
 See Goodyear Tire & Rubber Co. v. Ruby,
 
 312 Md. 413, 540 A.2d 482 (1988) (holding that a notice of a request for child or spousal support earnings lien was not an additional claim for relief requiring new service of process on the defendant; and that the right to exercise personal jurisdiction over the defendant arose when he was served with the original divorce complaint). Accordingly, service of the petition on Steven was governed by Rule 1-321. Neither the service of process rules nor the cases Steven cites pertaining to personal jurisdiction apply.
 

 The Circuit Court for Frederick County obtained personal jurisdiction over Steven in this action in 1999. Indeed, Steven submitted to the court’s jurisdiction over him by filing his complaint in that court in May of that year. Even if Deborah’s petition, filed in September 2002, was not properly served on Steven because, instead of being mailed to him, it was mailed to the lawyer who had represented him (and whose appearance only recently had been automatically terminated), the court still had personal jurisdiction over him. To be sure, Steven was entitled, under Rule 1-321 and under principles of due process, to notice of the petition.
 
 See Ledvinka v. Ledvinka,
 
 154 Md.App. 420, 429, 840 A.2d 173, (2003) (noting that the most important function of the pleading requirements is to provide notice to the parties as to the nature of the claims or defenses being asserted in the case) (citing
 
 Scott v. Jenkins,
 
 345 Md. 21, 27-28, 690 A.2d 1000 (1997) and
 
 Liberty Mut. Ins. Co. v. Ben Lewis Plumbing, Heating & Air Conditioning, Inc.,
 
 121 Md.App. 467, 710 A.2d 338 (1998)). Although the rule may not have been complied with, Steven in fact received
 
 *690
 
 actual notice of the petition. Any noncompliance with the rule did not affect the court’s jurisdiction over Steven’s person.
 
 [6]
 

 II.
 

 Indefinite Alimony
 
 (i)
 

 Legal Principles
 

 The passage in 1980 of the Maryland Alimony Act (“Act”), now codified at FL sections 11-101 through 11-111, significantly changed the approach to alimony in Maryland.
 
 Blaine, supra,
 
 336 at 64, 646 A.2d 413 (discussing Acts of 1980, chapter 575). As originally conceived, the purpose of alimony was to give a wife, who was presumed to be financially dependent and unable to support herself, support and maintenance from her husband, so she could continue, after divorce, the standard of living she had become accustomed to during the marriage.
 
 See Timanus v. Timanus,
 
 178 Md. 640, 642-43, 16 A.2d 918 (1940);
 
 Simpson v. Simpson,
 
 18 Md.App. 626, 628-29, 308 A.2d 410 (1973). After the Equal Rights Amendment was adopted as Article 46 of the Maryland Declaration of Rights, on July 1, 1972, the statutes governing alimony were amended to reflect gender neutrality, but the concept of alimony as a lifetime pension remained.
 
 See
 
 Md.Code (1957, 1975 Supp.), § 3 of former Article 16.
 

 
 *691
 
 Upon passage of the Act, however, the General Assembly rejected the prior concept of alimony “as lifelong support enabling the dependent spouse to maintain the standard of living enjoyed during the marriage.”
 
 Blaine, supra,
 
 336 Md. at 64, 646 A.2d 413.
 
 See also Tracey v. Tracey,
 
 328 Md. 380, 391, 614 A.2d 590 (1992). The General Assembly replaced that socially outdated concept with “the modern view that the dependent spouse should be required to be self-supporting, even if that results in a reduced standard of living.”
 
 Blaine, supra,
 
 336 Md. at 69, 646 A.2d 413.
 
 See also Holston v. Holston,
 
 58 Md.App. 308, 473 A.2d 459 (1984).
 

 The policy underlying the Act thus favors fixed term,
 
 i.e.
 
 definite, alimony over indefinite alimony, to provide the parties the incentive to become self-supporting.
 
 Turrisi v. Sanzaro,
 
 308 Md. 515, 524, 520 A.2d 1080 (1987) (stating that “ ‘in the ordinary case’ alimony would be awarded for a definite period of time, to promote the transitional or rehabilitative function”) (quoting the 1980 Report of the Governor’s Commission on Domestic Relations Laws);
 
 Innerbichler v. Innerbichler,
 
 132 Md.App. 207, 244, 752 A.2d 291 (2000). In
 
 Hull v. Hull,
 
 83 Md.App. 218, 222-23, 574 A.2d 20,
 
 cent. denied,
 
 321 Md. 67, 580 A.2d 1077 (1990), Judge Moylan explained that, with the adoption of the Alimony Act, “the law’s concern became that of fostering the self-sufficiency of both parties to the dissolved marriage.... [Ajlimony, when necessary, became essentially short-term and rehabilitative.... The goal is to render the party ... self-supporting so as to vitiate any further need for alimony.”
 

 The Act did not change the well-established principle that an equity court’s decision whether to grant an alimony award and, if so, in what amount is an exercise in discretion. FL § 11-106;
 
 Blaine, supra,
 
 336 Md. at 65, 646 A.2d 413;
 
 Turrisi v. Sanzaro, supra,
 
 308 Md. at 528, 520 A.2d 1080. It directs, under FL section 1 l-106(a)(l), that the court determine the amount of, and period for, an award of alimony; and, under FL section ll-106(b), that it consider “all the factors necessary for a fair and equitable award, including” twelve factors specifically enumerated. The Act also provides, at subsection
 
 *692
 
 ll-106(a)(2), that, “at the conclusion of the period of the award of alimony, no further alimony shall accrue.”
 

 The policy underlying the Act favors alimony awards that are definite, for transitional or rehabilitative purposes. Nevertheless, the Act permits an equity court to award alimony for an indefinite period in two exceptional circumstances: if, “due to age, illness, infirmity, or disability, the party seeking alimony cannot reasonably be expected to make substantial progress toward becoming self-supporting” (section 11—106(c)(1)); or if, “even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.” (Section ll-106(c)(2).) The spouse seeking indefinite alimony bears the burden of proof as to the existence of the prerequisites to entitlement to such an award.
 
 Thomasian v. Thomasian,
 
 79 Md.App. 188, 195, 556 A.2d 675 (1989).
 

 In order to exercise its discretion to award indefinite alimony on the ground of “unconscionable disparity,” under FL section 11—106(c)(2), the equity court must find that, even though the party seeking indefinite alimony can make substantial progress toward becoming self-supporting, at the time that maximum progress reasonably is expected, the standards of living of the parties will be unconscionably disparate.
 
 Blaine, supra,
 
 336 Md. at 64, 646 A.2d 413;
 
 Roginsky v. Blake-Roginsky,
 
 129 Md.App. 132, 141-42, 740 A.2d 125 (1999). Thus, deciding a request for indefinite alimony under FL section ll-106(c)(2) entails projecting forward in time to the point when the requesting spouse will have made maximum financial progress, and comparing the relative standards of living of the parties at that future time.
 
 Roginsky, supra,
 
 129 Md.App. at 146, 740 A.2d 125.
 
 See Blaine, supra,
 
 336 Md. at 64, 646 A.2d 413 (commenting that, because the language of section 11-106(c)(2) is prospective, it “in effect requires] ... the court [to] make a prediction as to the success of the dependent spouse’s efforts to become self-sufficient”).
 

 
 *693
 
 Under Maryland common law as it existed before passage of the Act, alimony was an incident of divorce and therefore the equity court’s power to grant alimony ended upon the granting of a divorce. For that reason, if the court granted a divorce but did not award alimony, it could not later award alimony.
 
 Blaine, supra,
 
 336 Md. at 68, 646 A.2d 413;
 
 Upham v. Upham,
 
 238 Md. 261, 265, 208 A.2d 611 (1965);
 
 Scott v. Scott,
 
 103 Md.App. 500, 511-12, 653 A.2d 1017 (1995);
 
 Speropulos v. Speropulos,
 
 97 Md.App. 613, 617, 631 A.2d 514 (1993). To guard against such a result, it became a common practice for the equity court to reserve jurisdiction over the issue of alimony, so that even though alimony was not awarded (because the issue was not decided) when the divorce was granted, the court later could award it.
 
 Blaine, supra,
 
 336 Md. at 68-69, 646 A.2d 413;
 
 Scott, supra,,
 
 103 Md.App. at 511-12, 653 A.2d 1017.
 

 In
 
 Turrisi v. Sanzaro, supra,
 
 308 Md. 515, 520 A.2d 1080 (1987), the Court of Appeals addressed the question of whether the equity court’s inherent power to reserve deciding the issue of alimony was eliminated by the Act. In that case, the wife at first sought indefinite alimony but at trial withdrew her request for an immediate award. The evidence showed that she was presently self-supporting as a physician. It also showed that she had multiple sclerosis, a progressive disease, and that, more likely than not, she would be totally disabled and therefore not self-supporting in five years. The wife asked the court to grant a divorce and reserve jurisdiction to decide the issue of indefinite alimony at a later date. The court granted a divorce, found that the wife had waived her request for immediate alimony, and declined to reserve on the issue of alimony, concluding that the Act had removed its power to do so.
 

 The Court of Appeals reversed on the issue of reservation. It held that the Act did not eliminate the equity court’s inherent power to reserve jurisdiction to decide the issue of alimony at a later date, after the divorce.
 
 Id.
 
 at 528, 520 A.2d 1080. It explained, however, that the policy of self-sufficiency
 
 *694
 
 underlying the Act now limits the circumstances in which an equity court properly may exercise its discretion to reserve. Reserving jurisdiction over the issue of alimony is not an abuse of discretion when the facts at trial “show that a highly probable basis for awarding [either rehabilitative or indefinite alimony] will exist in the immediate future.”
 
 Id.
 
 at 530, 520 A.2d 1080. In that situation, reservation does not run afoul of “the concepts of rehabilitative alimony for a definite time, the desirability of each spouse becoming self-supporting, the undesirability of alimony as a lifetime pension, and the use of indefinite alimony only in exceptional circumstances[.]”
 
 Id.
 
 at 528, 520 A.2d 1080.
 

 The Court further explained that, in view of “the [A]et’s emphasis on promotion of economic self-sufficiency, its favorable approach to alimony for a definite period, and its opposition to the notion of alimony as a lifetime pension,” it is improper for a court to reserve deciding the issue of alimony “simply because there may be some vague future expectation of circumstances that might show a basis for alimony,” or “the possibility that the [alimony] claimant might become aged, infirm, or disabled, or that standards of living could conceivably be unconscionably disparate at some unknown future date.... ”
 
 Id.
 
 at 529, 520 A.2d 1080.
 

 The Court in
 
 Turrisi
 
 concluded that, because there was evidence adduced in the divorce trial showing a probability that in the near future the wife’s illness would render her incapable of being self-supporting—an exceptional circumstance that would support an award of indefinite alimony under FL section 11—106(c)(1)—the court properly could have exercised discretion to reserve deciding the issue of alimony.
 
 See by contrast Durkee v. Durkee,
 
 144 Md.App. 161, 797 A.2d 94 (2002) (holding that the circuit court abused its discretion in reserving a decision on alimony on the basis of evidence that the husband’s business might in the future produce income commensurate with his earnings potential, and therefore it was possible that there would be an unconscionable disparity in standards of living of the former spouses).
 

 
 *695
 
 In
 
 Blaine v. Blaine, supra,
 
 the Court of Appeals addressed the question of whether a court that has made an award of rehabilitative alimony when granting a divorce can later extend the award, under FL section ll-107(a)(l), for an indefinite period. That statute states that, subject to FL section 8-103 (concerning modification of agreements between spouses), a court “may extend the period for which alimony is awarded, if ... circumstances arise during the period that would lead to a harsh and inequitable result without an extension.”
 

 The parties in
 
 Blaine
 
 were married for 18 years. At the time of the divorce, the husband was a doctor, earning $62,000 per year. The wife, a teacher’s aide, was earning $10,000 per year. She was college-educated, however, and was in the process of obtaining a master’s degree in the field of health promotion. She expected that once she obtained her advanced degree she would become employed as a health promotion counselor. The trial court awarded the wife $800 per month in rehabilitative alimony for 60 months.
 

 Shortly before the five-year period expired, the wife filed a motion to extend the alimony award to make it indefinite. At an evidentiary hearing, she testified that she had earned her master’s degree, as anticipated, but in the meantime the field of health promotion had become static, and there were no job opportunities. Despite applying for more than 100 positions in that area, she was unable to secure employment. Although at the time of the divorce she expected that upon earning her master’s degree she would obtain employment paying approximately $40,000 per year, that expectation did not materialize; instead, she was working three jobs and earning a total of just over $29,000 per year. The evidence further showed that in the same period the husband’s income had increased substantially, to over $140,000 per year. The court granted the motion and ordered an indefinite extension of the $800 per month alimony award.
 
 [7]
 

 
 *696
 
 On review, the Court of Appeals held that, under FL section ll-107(a), a court may extend an award of fixed term, definite alimony to make it indefinite, upon proof by the moving party that new circumstances have arisen after the time of the original award that make it harsh and inequitable not to extend the award; and that at the time of the extension request, a prerequisite basis for awarding indefinite alimony exists, under FL subsections ll-106(c)(l) or (2). The Court concluded that the evidence of the wife’s failure, due to extrinsic forces out of her control, to meet the expectations of future employment she had at the time of trial was a sufficient showing of a change in circumstance that would lead to a harsh and inequitable result without an extension of rehabilitative alimony to support the equity court’s decision to extend.
 

 Also of import to the case at bar, in
 
 Coviello v. Coviello,
 
 91 Md.App. 638, 605 A.2d 661 (1992), this Court approved an equity court’s award of “compound alimony,” that is, an award of fixed-term rehabilitative alimony and a simultaneous award of indefinite alimony. There, the evidence at trial showed that the wife was not self-supporting, and would need 18 months of job training to become employable in a job that would make her self-supporting. The evidence further showed, and the trial judge found, that, the standards of living of the parties would be unconscionably disparate even after the wife would have reached maximum rehabilitation. On that basis, the court awarded the wife alimony of $1,500 per month for 18 months, to then be reduced by $700 per month (to $800) for an indefinite period.
 

 The husband challenged the alimony award, arguing that it was an improper
 
 in futuro
 
 reduction in amount. We rejected the argument, concluding that the trial court’s award constituted 18 months of rehabilitative alimony
 
 and
 
 indefinite alimony,
 
 i.e.,
 
 a “compound award.” At the end of the rehabilitative alimony period, that award would cease, and the indefinite alimony award would continue. Thus, the award did not provide for a future reduction in the amount of alimony, but only for the cessation of the portion of the award that was rehabilitative. We held that a court may exercise discretion to
 
 *697
 
 make such a compound award, when supported by the evidence, because such an award advances the self-sufficiency objectives of the Act and at the same time permits indefinite alimony when there is a residual unconscionable disparity in standards of living even after maximum rehabilitation.
 

 (ii)
 

 Analysis
 

 In the case at bar, at the conclusion of the merits trial, the trial judge made a factual finding that, within a 23-month period, Deborah could become self-supporting at a maximum projected income level of $25,000 to $30,000 per year, but the standards of living of the parties still would be unconscionably disparate. He then awarded “rehabilitative alimony” for 23 months and “reserved on the issue of indefinite alimony.” There is no inconsistency between the oral ruling from the bench and the written Judgment of Absolute Divorce. They both clearly state that “the issue of indefinite alimony” is being “reserved” for later decision.
 

 The motion court incorrectly read the Judgment of Absolute Divorce, and the trial judge’s oral ruling from the bench, as a then-present decision to award Deborah indefinite alimony, in a yet-to-be-determined amount. Language in a ruling or judgment expressly “reserving” on “the issue of indefinite alimony” is not a decision to award indefinite alimony; it is a decision to later decide the issue. Although the trial judge made a factual finding that could have been the starting point to exercise his discretion to make a present award of indefinite alimony, he did not decide whether to make an indefinite alimony award, either by itself or as part of a “compound award,” such as was made in
 
 Coviello.
 
 Rather, he reserved for another day the court’s jurisdiction to decide “the issue of indefinite alimony.”
 

 The issue of indefinite alimony includes the question of necessity and, if so, amount. The
 
 Coviello
 
 decision makes plain that a court may not award indefinite alimony in an
 
 *698
 
 amount to be determined in the future.
 
 Cf. Prahinski v. Prahinski,
 
 75 Md.App. 113, 137, 540 A.2d 833 (1988),
 
 aff'd,
 
 321 Md. 227, 582 A.2d 784 (1990) (holding that equity court may not grant indefinite alimony to begin in the future, based upon assumptions about what the probable state of the parties’ finances will then be). A ruling or judgment reserving on the issue of indefinite alimony, therefore, is a decision to reserve deciding whether to award indefinite alimony and, if so, in what amount, not a decision to award indefinite alimony at a future time, in an unspecified amount. (In this case, the parties affected by the judgment reserving jurisdiction to decide the issue of indefinite alimony would not have had reason to think that the judgment was dispositive of the very issue the court was reserving decision over, and therefore were not on notice by the judgment that such a decision had been made, for purposes of exercising their appellate rights.)
 

 Our decision in
 
 Coviello,
 
 recognizing that a court in equity has authority to award rehabilitative
 
 and
 
 indefinite alimony simultaneously, rests on the concept that they are not mutually exclusive: that is, a decision to grant rehabilitative alimony is not necessarily a decision to deny indefinite alimony. If a court may grant an amount of alimony for a fixed period for purposes of rehabilitation and at the same time grant an amount of alimony that is indefinite, under FL section 11-106, it follows that a court may grant an amount of alimony for a fixed period for purposes of rehabilitation and at the same time reserve jurisdiction to later decide the issue of indefinite alimony. Indeed, in
 
 Benkin v. Benkin,
 
 71 Md.App. 191, 205, 524 A.2d 789 (1987), we observed in
 
 dicta
 
 that a “court may decide to award alimony for a limited duration while exercising its power to reserve as to indefinite alimony.”
 

 Of course, under
 
 Turrisi,
 
 an equity court only may properly exercise discretion to reserve on the issue of indefinite alimony only
 
 upon present evidence of the probability, in the near future, that circumstances will exist to support such an award. See also Thomasian v. Thomasian, supra,
 
 79
 
 *699
 
 Md.App. 188, 556 A.2d 675.
 
 [8]
 
 In this case, the trial judge made such a finding on the evidence: he found as a present fact that it was probable that, in 23 months, notwithstanding Deborah’s making reasonable progress toward educational and vocational rehabilitation, the standards of living of the parties would be unconscionably disparate, a circumstance that may permit an award of indefinite alimony under FL 11-106(c)(2).
 
 [9]
 
 Although that finding could have been a starting point for the court to exercise its discretion to make a present award of indefinite alimony, it was not.
 
 [10]
 
 As the record plainly reflects, the trial court decided to retain jurisdiction to decide the issue of indefinite alimony at a later time.
 

 Deborah’s petition, viewed in its procedural context, was an entreaty to the equity court to act upon its express reservation of jurisdiction and decide the issue of indefinite alimony. Contrary to an argument Steven advances in this Court, the petition was not a motion to extend a rehabilitative alimony
 
 *700
 
 award for an indefinite period, under FL section ll-107(a). In a motion for extension case, such as
 
 Blaine,
 
 the equity court in the original proceeding has not reserved jurisdiction over the issue of alimony. Under the doctrine of
 
 res judicata,
 
 therefore, the parties are precluded from relitigating the issues that were decided or could have been decided in the original proceeding.
 
 Blaine, supra,
 
 336 Md. at 71, 646 A.2d 413. That doctrine is the predicate for the change in circumstances and harsh and inequitable result standard set forth in FL section ll-107(a)(l), governing extension requests.
 
 See Lieberman v. Lieberman,
 
 81 Md.App. 575, 597, 568 A.2d 1157 (1990) (commenting that “the doctrine of
 
 res judicata
 
 applies in the modification of alimony ... and the court may not relitigate matters that were or should have been considered at the time of the initial award”).
 

 In the case at bar, Deborah’s petition did not seek to modify a prior decision on an issue over which jurisdiction was not reserved. It sought to have the court decide an issue it had reserved judgment to decide at a later date. Accordingly, the standard set forth in FL section ll-107(a), as explicated in
 
 Blaine,
 
 did not apply. Also, Deborah’s petition did not have to be filed during the period of definite alimony, under FL section ll-107(a)(2).
 
 [11]
 

 The motion court in this case should have ruled on Deborah’s petition by making factual findings, applying the law, and exercising its discretion to decide the reserved issues: should Deborah be awarded indefinite alimony and, if so, in what amount? Inasmuch as it erroneously concluded that the trial court had already decided the “whether” aspect of indefinite alimony, the motion court did not address and decide that
 
 *701
 
 issue itself. For that reason, we shall vacate the motion court’s order and remand the case for further proceedings.
 

 We make the following observations for the guidance of the motion court on remand, so as to avert possible future appellate issues. The motion court can make its decision on the facts adduced at the evidentiary hearing on May 1, 2003. If the motion judge believes it would be necessary or helpful to receive additional evidence, he may reopen the hearing for that purpose.
 

 Although the motion court’s decision is highly discretionary, it should be guided by the objective of self-sufficiency that underlies the Act. As explained, the law favors fixed-term alimony that is rehabilitative or transitional in purpose. A party seeking an indefinite alimony award bears the burden of proving the existence of a prerequisite for such an award of indefinite alimony under FL section 11-106(c). Deborah’s evidence thus must show that at present, such a prerequisite exists—not that it may once have existed. To be eligible to receive indefinite alimony under FL section 11-106(c)(2), she must show that, projecting into the future
 
 from, the present (not from the time of the merits trial),
 
 even after she will have made as much progress toward self-sufficiency as reasonably can be expected, there will be an unconscionable disparity between her standard of living and Steven’s.
 
 [12]
 
 The comparison to be made is between Steven’s post-divorce standard of living and Deborah’s post-divorce standard of living upon making as much progress toward becoming self-supporting as reasonably can be expected.
 

 In predicting Deborah’s post-divorce projected standard of living, the motion court should take into account her
 
 *702
 
 $19,760 per year actual earning capacity, which is, without any training or education, an amount significantly higher than was imputed to her less than two years earlier by the trial court. The motion court should consider the level of present earnings Deborah would have if she had made the reasonable efforts at rehabilitation the trial court had expected her to make when it awarded fixed-term alimony in 2000 for that purpose; impute that amount to her; and project her future level of earnings forward from that point. Otherwise, it will have been to Deborah’s benefit not to have made any effort to better her education and hence her earning capacity when she was awarded fixed-term alimony to accomplish that very purpose.
 

 In making a prediction about Deborah’s projected post-divorce standard of living, the court should determine where Deborah would be financially if she had made reasonable efforts to obtain full-time employment and a degree from FCC, as the trial court had expected her to do, and predict her future financial capacity on that basis, and upon the ongoing assumption of reasonable efforts. The court may take into account the collateral benefits and opportunities that often attend placing oneself in the full-time job market, and more specifically in the post-secondary school education job market, which Deborah could not experience, because she kept herself out of the full-time job market altogether until August 2002, and out of the more advanced job market by not educating herself or making other efforts at vocational rehabilitation; and also may impute income to Deborah on that basis.
 

 The mathematical comparison of incomes of the parties, including projected future incomes “is the starting point of the analysis” but “is never conclusive.”
 
 Blaine, supra,
 
 at 336 Md. at 71, 646 A.2d 413.
 
 See also Karmand v. Karmand,
 
 145 Md.App. 317, 337, 802 A.2d 1106 (2002). The motion court on remand should take into account all facts relevant to the parties’ standards of living, including those relating to the FL section 11—106(b) factors:
 

 (1) the ability of the party seeking alimony to be wholly or partly self-supporting;
 

 
 *703
 
 (2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;
 

 (3) the standard of living that the parties established during their marriage;
 

 (4) the duration of the marriage;
 

 (5) the contributions, monetary and nonmonetary, of each party to the well—being of the family;
 

 (6) the circumstances that contributed to the estrangement of the parties;
 

 (7) the age of each party;
 

 (8) the physical and mental condition of each party;
 

 (9) the ability of the party from whom alimony is sought to meet that party’s needs while meeting the needs of the party seeking alimony;
 

 (10) any agreement between the parties;
 

 (11) the financial needs and financial resources of each party, including:
 

 (i) all income and assets, including property that does not produce income;
 

 (ii) any award made under §§ 8-205 and 8-208 of this article;
 

 (iii) the nature and amount of the financial obligations of each party; and
 

 (iv) the right of each party to receive retirement benefits; and
 

 (12) whether the award would cause a spouse who is a resident of a related institution as defined in § 19-301 of the Health—General Article and from whom alimony is sought to become eligible for medical assistance earlier than would otherwise occur.
 

 The court should then determine whether there will be a disparity in the parties’ standards of living.
 

 If the motion court finds a disparity, it then must determine whether the disparity is “unconscionable.” As the Court of Appeals in
 
 Blaine
 
 emphasized, a
 
 significant
 
 disparity in the
 
 *704
 
 parties’ standards of living will not warrant an award of indefinite alimony, under FL section 11-106(c)(2).
 
 Blaine, supra,
 
 336 Md. at 71, 646 A.2d 413. “As the statute provides, the disparity must be ‘unconscionable,’ a determination which requires the application of equitable considerations on a case-by-case basis, consistent with the trial court’s broad discretion in determining an appropriate award.”
 
 Id.
 
 at 71-72, 646 A.2d 413.
 
 See Karmand v. Karmand, supra,
 
 at 337-38, 802 A.2d 1106. How the parties have come to occupy their respective standards of living, including whether they have made reasonable efforts to achieve financial self-sufficiency, is such a consideration.
 

 Finally, if, on remand, the motion court exercises its discretion to award indefinite alimony, it should take into consideration, in setting an appropriate amount, that the rehabilitative alimony the trial court awarded in 2000 factored in the anticipated cost for Deborah to attend FCC, and that Deborah did not use any of the award for that purpose.
 

 ORDER VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY THE APPELLANT.
 

 [1]
 

 . The court rejected Deborah's argument that Steven had deserted her. The trial judge found that there was evidence that Deborah had been involved with another man before the separation and that Steven had asked her to break off the relationship but she had refused; and that, while not sufficient to prove adultery, the evidence was sufficient to show that Steven's leaving the home was not a desertion of the marriage.
 

 [2]
 

 . The trial judge noted that the parties may have turned 43 during the course of the proceedings, but he did not have a record of their birth dates.
 

 [3]
 

 . The judge who presided over the hearing on the petition was not the same judge who had presided over the merits trial. For the sake of clarity, we shall refer to the court and judge in the merits trial as the "trial court” and "trial judge,” and the court and judge in the petition hearing as the "motion court” and "motion judge.”
 

 [4]
 

 . In the merits trial and in the petition hearing, Deborah testified that she was suffering from headaches that interfered with her ability to work full time. She acknowledged taking narcotic prescription pain medication, and asserted that the medicine was to address her headaches. Steven took the position that Deborah had no underlying medical condition to explain her medication use. The judges in both proceedings rejected Deborah’s testimony and concluded that she did not have a medical condition that prevented her from working full time or limited the capacity in which she could work.
 

 [5]
 

 . The lawyer representing Steven in this appeal is not the same lawyer who represented him below.
 

 [6]
 

 . Rule 2-322(a) requires that certain defenses in civil cases “shall be made before the answer, if an answer is required.” The defenses include "lack of jurisdiction over the person.” If any of these defenses are not made by motion to dismiss and the answer is filed, they are waived.
 

 If the petition in this case could be characterized as a pleading, Steven was required to raise the defense of lack of personal jurisdiction by motion to dismiss. The motion to dismiss he filed did not raise that defense. For that reason also, the defense of lack of personal jurisdiction was waived below.
 
 See Chapman v. Kamara,
 
 356 Md. 426, 438, 739 A.2d 387 (1999) (noting that once a party files an answer without raising the defense of lack of personal jurisdiction, the defense is waived);
 
 LVI Environmental Services, Inc. v. Academy of IRM, 106
 
 Md.App. 699, 707, 666 A.2d 899 (1995) (same).
 

 [7]
 

 . The wife also had requested an increase in the monthly alimony amount. That request was denied by the equity court, and was not an issue on appeal.
 

 [8]
 

 .
 
 Thomasian v. Thomasian
 
 is an example of a case in which the trial court's findings would not have supported a decision to reserve on the issue of indefinite alimony. The wife was seeking indefinite alimony on the basis that she had an eye disease that rendered her not capable of being self-supporting. The trial court found that the evidence adduced about the wife’s claimed disability was inconclusive, and on that basis granted her a five year rehabilitative alimony award. This Court reversed the judgment, holding that the trial court could not award rehabilitative alimony in those circumstances. We remanded the case for the court to make a decision on the issue of indefinite alimony. The trial court did not address or make a finding that on the present facts it was probable that in the near future the wife would be disabled and not capable of being self-supporting.
 

 [9]
 

 . The trial court’s decision to reserve jurisdiction over the issue of indefinite alimony was part of its Judgment of Absolute Divorce, which was a final, appealable judgment when entered, on October 17, 2000. Any challenge to the court’s exercise of discretion to reserve jurisdiction over that issue, including any challenge to the factual findings underpinning that exercise of discretion, had to be made by way of a timely appeal from the Judgment of Absolute Divorce. Neither party noted an appeal, however.
 

 [10]
 

 . Income comparison is but one factor relevant to whether there will be an unconscionable disparity in the standards of living of the parties under FL section 11-106(c)(2).
 
 Blaine v. Blaine, supra, 336 Md.. at 71, 646 A.2d 413. See
 
 discussion,
 
 infra.
 

 [11]
 

 . We note that Deborah's petition was filed within days of the expiration of the rehabilitative alimony payments, and at the point in time that the trial judge, in exercising his discretion, projected there would be an unconscionable disparity in standards of living of the parties. Had Deborah delayed filing her petition within the time frame envisioned by the trial court for deciding the reserved issue, her petition might have been barred under the doctrine of laches.
 

 [12]
 

 . As we have explained, the trial court's reservation was made on the basis that the evidence adduced supported a finding that in 23 months, notwithstanding reasonable efforts at rehabilitation, there would be an unconscionable disparity in standards of living of the parties. The trial court rejected the evidence offered by Deborah to show that she was at that time, or would be at some future time, unable to become self-supporting due to illness, under FL section 11-106(c)(1).